Joe Laredo **MENDIETA**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 1108–83.

Court of Criminal Appeals of Texas,
En Banc.

March 19, 1986.

Donald S. Gandy, court appointed, Fort Worth, for appellant.

Tim Curry, Dist. Atty. and C. Chris Marshall, Brent A. Carr and Tom Myers, Asst. Dist. Attys., Fort Worth, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

McCORMICK, Justice.

Appellant was convicted of voluntary manslaughter. On direct appeal, appellant argued that the trial court erred in refusing to charge the jury on the lesser included offense of criminally negligent homicide. The Court of Appeals affirmed appellant's conviction, *Mendieta v. State,* 659 S.W.2d 489 (Tex.App.-Fort Worth, 1983). We granted appellant's petition for discretionary review to examine the Court of Appeals' opinion in light of *Hunter v. State,* 647 S.W.2d 657 (Tex.Cr.App.1983).

At trial, appellant testified on direct examination in pertinent part as follows:

"Q. What type of fear were you in at the time that you were there under him?

"A. When I seen him in the condition he was in, I feared for my life.

"Q. Did you see him make any sort of move that enhanced that fear?

"A. Yes, sir.

"Q. What type of move was that?

"A. When he pushed me the second time and I fell, he went for his pocket or it seemed to me.

"Q. And this was—

"A. That night of the 25th.

"Q. This all happened fairly quickly?

"A. Yes, sir.

"Q. What did you do then?

"A. When I fell, I went for my front pocket. I got my knife out with my right hand. I opened it with my left hand, and as I was coming up to keep him away from me by swinging, he came again towards me and he met my knife.

"Q. And your knife went into him?

"A: Sir?

"Q. Your knife went into him?

"A. Yes, sir.

"Q. Did you intend to stab him?

"A. No, sir. I intended to keep him away. Tony was my friend."

On cross-examination, he testified as follows:

"Q. Isn't it true, sir, that the motion that you stabbed Mr. Tiner with was a straight motion, one that was

so quick that he could not duck or dodge or back off because it was so quick?

"A. No, sir.

"Q. And you knew where you were stabbing him, didn't you?

"A. No, sir."

On redirect, the following occurred:

"Q. And when you took your knife out, were you standing up or on the ground?

"A. I was on the ground.

"Q. At that point in time could you retreat, sir?

"A. No, sir.

"Q. When you swung your knife, did you intend to stab Tony Tiner?

"A. No, sir.

"Q. Did you intend to kill Tony Tiner?

"A. No, sir."

The Court of Appeals found that since appellant testified that he *intended* to keep the deceased away from him by swinging the knife in front of him he was aware of the risk created by his action. Thus, criminally negligent homicide was not raised.

Appellant argues that since he did not *intend to kill* the deceased, the issue of criminally negligent homicide was raised.

V.T.C.A., Penal Code, Section 6.03(d), defines criminal negligence:

"A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint."

The key to criminal negligence is the failure of the actor to perceive the risk created by his conduct. *Lewis v. State,* 529 S.W.2d 550 (Tex.Cr.App.1975). This was addressed in the recent case of *Thomas v. State,* 699 S.W.2d 845 (Tex.Cr.App.1985), where we pointed out that evidence raising the issue of whether a defendant was aware of the risk must be presented before such a charged is warranted.

"Evidence that a defendant knows a gun is loaded, that he is familar with guns and their potential for injury, and that he points a gun at another, indicates a person who is aware of a risk created by that conduct and disregards the risk. Cf. *Simpkins v. State,* 590 S.W.2d 129 (Tex.Cr.App.1979). That he does not anticipate a third person bumping him, causing the weapon to discharge, is a consideration that must be examined with the other evidence to determine awareness of the risk involved in pointing a loaded gun at another. However, in such a case, the awareness of the risk is not necessarily altered. It is not necessarily *inattentive* risk creation. *Lewis,* supra. Rather, the risk is realized and actual harm results. Just because part of the conduct may be 'involuntary' does not relieve a defendant of responsibility and culpability for the entire action. [footnote omitted]. Similarly, a defendant may be aware of a risk and disregard it. The resulting harm may not have been intended, but the defendant is nonetheless responsible to some degree because he disregarded a risk." [Emphasis in original.] *Thomas v. State,* 699 S.W.2d at 850.

In *Thomas,* we criticized several cases decided by this Court in years past which dealt with this same issue. Our main criticism was that this Court, while holding that the evidence raised criminally negligent homicide, neglected to detail the evidence which showed that the defendant ought to have, but did not, perceive a substantial and unjustifiable risk in his conduct. Two of the cases relied on by appellant, *Schoelman v. State,* 644 S.W.2d 727 (Tex.Cr.App.1983), and *London v. State,* 547 S.W.2d 27 (Tex.Cr.App.1977), were chief among those criticized. We have also examined *Bodecker v. State,* 629 S.W.2d 65

653

(Tex.App.-Dallas 1981, petition refused), another case cited by appellant, and find that it suffers from the same defect.

*Hunter v. State,* 647 S.W.2d 657 (Tex.Cr. App.1983), relied on by appellant, is also distinguishable from the instant case. In *Hunter,* the evidence clearly showed appellant was unaware of the risk. Hunter was tried for murder. At trial, he testified that while driving his car he swung his gun over the back seat in order to quiet the deceased. Although he did not pull the trigger or cock the gun, the gun discharged, killing the deceased. On cross-examination, Harris testified that he had never fired the gun before and in fact did not even know if it would shoot. This testimony showed that Harris was unaware of the risk his conduct was creating.

It is encumbent that the record contain evidence showing an unawareness of the risk before a charge on criminally negligent homicide is required. *Thomas v. State,* supra. As the Court of Appeals correctly pointed out in its opinion, appellant testified that he pulled out his knife and began swinging it in order to keep the deceased away from him. This testimony shows that appellant *was aware* of the risk he was creating. As in *Thomas,* the evidence entitled appellant to a charge on involuntary manslaughter, but it did not raise criminally negligent homicide. Because there is nothing in the evidence presented which indicates that appellant was unaware of the risk his conduct created, we find that the issue of criminally negligent homicide was not raised and the trial court did not err in refusing to give appellant's requested charge.

The judgments of the trial court and the Court of Appeals are affirmed.

CLINTON, J., concurs.

TEAGUE, J., dissents for the reasons stated in the dissenting opinion that he filed in *Thomas v. State,* 699 S.W.2d 845, 858 (Tex.Cr.App.1985).