**Barry Lynn BERGERON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–96–01446–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

Sept. 10, 1998.

Michael Ramsey, George H. Tyson, Jr., Houston, for appellants.

John B. Holmes, Calvin Hartman, Houston, for appellees.

Before Justices MIRABAL, WILSON, and TAFT.

## OPINION

MIRABAL, Justice.

A jury found appellant, Barry Lynn Bergeron, guilty of murder. The jury assessed punishment at 20–years confinement and a $10,000 fine. We affirm.

Appellant was charged by indictment with (a) unlawfully, intentionally, and knowingly causing the death of complainant by stabbing him with a deadly weapon, a knife, and (b) unlawfully intending to cause serious bodily injury to complainant and causing the death of complainant by intentionally and knowingly committing an act clearly dangerous to human life, namely by stabbing him with a deadly weapon, a knife. *See* TEX.PENAL CODE ANN. § 19.02(b)(1) and (2) (Vernon 1994). The jury charge included both methods of committing murder, as well as a charge on self-defense.

In two points of error, appellant asserts the trial court erred in failing to grant his requested charge on (a) criminally negligent homicide, and (b) aggravated assault, both of which he claims are lesser included offenses of murder in this case.

We apply a two-part test. First, we must determine whether either criminally negligent homicide or aggravated assault constitutes a lesser included offense, as defined by statute. *See* TEX.CODE CRIM.P.ANN. art. 37.09 (Vernon 1986);[1] *Schweinle v. State,*

---

1. Article 37.09 provides an offense is a lesser included offense if (1) it is established by proof of the same or fewer than all the facts required to establish the commission of the offense charged, (2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission, (3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission, or (4) it consists of an attempt to commit the offense charged or an otherwise in-

915 S.W.2d 17, 18 (Tex.Crim.App.1996); *Jones v. State,* 921 S.W.2d 361, 364 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd). Second, if so, there must be some evidence that would permit a rational jury to find that, if appellant is guilty, he is guilty only of the lesser offense. *Schweinle,* 915 S.W.2d at 18; *Jones,* 921 S.W.2d at 364.

 Aggravated assault is a lesser included offense of murder, as defined by statute. *Stine v. State,* 908 S.W.2d 429, 430 (Tex.Crim.App.1995); *Smith v. State,* 881 S.W.2d 727, 734 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd). Criminally negligent homicide is also a lesser included offense of murder in this case as defined by statute. *Saunders v. State,* 840 S.W.2d 390, 391 (Tex. Crim.App.1992); *Conroy v. State,* 843 S.W.2d 67, 71 (Tex.App.—Houston [1st Dist.] 1992, pet. refused). Therefore, the first prong of the two-part analysis is established.

The question remaining is whether there is some evidence that appellant, if guilty, is guilty only of the lesser included offense of aggravated assault or criminally negligent homicide.

 A jury, as the sole trier of fact, is entitled to selectively believe all or part of the conflicting testimony proffered and introduced by either side at trial. *Bignall v. State,* 887 S.W.2d 21, 24 (Tex.Crim.App. 1994). Anything more than a scintilla of evidence from any source is sufficient to entitle a defendant to submission of the issue. *Schweinle,* 915 S.W.2d at 18. The evidence in this case was as follows:

At approximately 12:15 a.m., complainant, Alan Boggs, and his fiancee, Misty Robertson, were leaving the barbecue cook-off at the Houston Livestock Show and Rodeo. Both had been drinking. Complainant was wearing Wrangler jeans, boots, and a cowboy hat. As they were pulling out of the parking lot in complainant's truck, complainant rear ended a Maxima.

Complainant got out of the truck and inspected the damage; the truck was undamaged, but the Maxima had a bumped fender and a broken taillight. Complainant asked Ms. Robertson to get the insurance information out of the glove box, and she began exchanging information with the driver of the Maxima and one of the female passengers. By this time, all of the passengers, including appellant, had gotten out of the car, yelling that the car was new. All of them had been drinking at the cook-off. Ms. Robertson described them as "a little irate."

Appellant started an argument with complainant, calling him a "fucking cowboy," and asking him, "What were you thinking?" Complainant responded, "If you don't shut up, I'll kick your wormy ass." The driver of the Maxima tried to step between the two and diffuse the situation. Appellant made a sarcastic comment about whether complainant would shake his hand. The insults escalated when suddenly complainant threw a punch at appellant, grazing the driver of the Maxima.

Complainant and appellant briefly struggled on the ground with complainant on top. Complainant was 6'2" and weighed approximately 240 pounds, and appellant was approximately 5'9" and weighed 140 pounds. Several people tried to separate the men, but both of them broke away and started to grapple again. Witnesses testified that both parties were "getting their licks in."

While they were wrestling on the ground and hitting each other with their fists, appellant pulled a knife out of his pocket. The lock-blade knife had a three-inch blade. Appellant concealed the knife next to his body, and no one saw that he had it. Appellant did not want to get his "ass whipped good" by complainant; he was scared by complainant's large size. However, appellant never said or did anything to indicate that he was backing down or wished to end the fight. Instead, in an attempt to ward off complainant, appellant "whipped out" his knife and stabbed complainant in the groin area. Complainant continued trying to get at appellant. Appellant, who was still underneath complainant, was able to momentarily push him up and off with his foot. As complainant came back at appellant, the knife entered his chest and pierced his heart. The knife stabbed

cluded offense. Tex.Code Crim.P.Ann. art. 37.09 (Vernon 1986).

through the sternum running three and one-half inches into complainant's body.

Complainant stumbled over to his truck and fell down, his shirt covered with blood. No one in the crowd actually saw the stabbing. Spotting the knife on the ground and seeing all of the blood, Ms. Robertson screamed, "Who stabbed my boyfriend?" She picked up the knife and threw it into the driver's side door of the truck. Attempts to resuscitate complainant were unsuccessful. During this period, the knife disappeared, but it was later found under a nearby truck.

Appellant was detained by an off-duty policeman who had heard the commotion and had seen complainant, covered with blood, reaching for his truck. When the police arrived, appellant was handcuffed and put in the back of the patrol car. Appellant's only injuries were scraped knuckles and a scratch across the back of one shoulder. When the driver of the Maxima asked appellant whether he had stabbed complainant, appellant nodded his head in the affirmative.

Appellant signed a written statement made on the day of the offense in question in which he stated:

After I tried to get up a second time I grabbed into my left front pocket for my knife and I poked him in the leg with it. He still kept coming after me while I was still on my back, on the ground. He stood up and I halfway got up and I stuck it in his midsection.

At trial, appellant testified and gave a slightly different version of the events:

Q. Okay. What happens next?

A. Well, next he comes at me and gets me on the ground and comes at me swinging at me, and I stuck him in the groin, you know, just trying to ward him off of me at first.

Q. After you stuck him in the groin area, did you know you were sticking him in the groin?

A. Yes, uh-huh. No. I thought it was his leg actually but just to maybe stick him in the leg, maybe he would feel something to get him off of me. I didn't want to hurt him anyway really.

Q. What happened next?

A. Well, he didn't feel that and he got me on the ground, started hitting me while I was on my back.

Q. What happened next?

A. I just covered up with my hand over my head with the knife still in my hand, just, you know, so somebody would come and help me. I don't know. That's what I was waiting on and it didn't really happen.

Q. What happened next?

A. I had my foot in his midsection.

Q. Right or left?

A. My right foot. And I got him back off of me and that's—

Q. Was anybody helping pulling him back?

A. Not that I could see, huh-uh. I was just focused on him and where he was and all that.

Q. But he came back off of you?

A. Yeah, he came back off of me. I thought I had done it by myself, pushed him with my right foot and it was pretty easy to get him off of me. I can recall that. It was easy to get him off of me. After I had got him off of me, I had got up to, well, I got to stand up. I was trying to stand up but I didn't make it that far.

Q. What happened?

A. And he comes at me again.

Q. What did you do?

A. I just, you know, kind of ducked my head to the side and stuck my handle out like that and he comes into me and impales himself on the knife. . . .

Q. All right. All right. Have a seat. What did you do next?

A. Well, after I impaled the knife on him, he just stopped and I just sat down on my back side.

Q. Did you intend to kill—

A. No. No, sir. Not at all.

Q. Were you defending yourself?

A. Yes, sir.

Q. What was going through your mind at the time of the second charge?

A. Just, I just wanted it to be over. I didn't—I was afraid, that's all. I was just afraid.

Appellant insisted that he never intended to hurt complainant at all, he just wanted him off. He did not intend to kill complainant; the fatal wound was accidentally inflicted as complainant impaled himself on the knife.

The medical examiner testified that the fatal wound to the heart was consistent with being stabbed or impaling oneself. The wound to the groin area was equally deep and gaped an inch, but it only penetrated fat and muscle, and was not fatal.

### Aggravated Assault

■ Appellant argues that the key to this case is that there were two stab wounds. Appellant asserts that the jury could have reasonably concluded from the evidence that appellant intentionally, knowingly, or recklessly caused bodily injury to complainant when he stuck complainant in the groin area with the knife, thus committing aggravated assault,[2] while at the same time concluding appellant did not intentionally and knowingly stab complainant in the chest. Appellant argues the evidence reasonably supports a finding that appellant was merely trying to scare complainant off when he stabbed him in the groin, and complainant himself rushed appellant and fell on the knife, causing the puncture of his chest and heart, as opposed to appellant knowingly and intentionally stabbing complainant in the chest.

The problem with appellant's approach is that it ignores the language of the indictment. Appellant was charged specifically with causing the death of complainant by stabbing him with a knife. Only one knife stab, the one that pierced complainant's heart, caused his death. Therefore, the only issue is whether that one stab was committed by appellant with the requisite intent.

A person commits aggravated assault if he intentionally, knowingly, or recklessly causes serious bodily injury to another, or intentionally or knowingly threatens or injures another with a deadly weapon. TEX.PENAL CODE ANN. §§ 22.01(a), 22.02(a) (Vernon 1994).

Serious bodily injury is defined as that which "creates a substantial risk of death or that causes death [or] serious permanent disfigurement." TEX.PENAL CODE ANN. § 1.07(a)(46) (Vernon 1994). Thus, if appellant intentionally or knowingly created an injury that caused the death of complainant, he would have committed aggravated assault; however, he also would have committed murder as charged in the first paragraph of the indictment. Therefore, he could not be found guilty *only* of the lesser included offense of aggravated assault under such circumstances. Furthermore, there was no evidence that appellant threatened or injured complainant with a deadly weapon but did not cause his death. The fact of complainant's death was not contested. Finally, there was no evidence that appellant consciously "disregarded the risk" of using his knife. TEX.PENAL CODE ANN. § 6.03(c) (Vernon 1994). Appellant intentionally stabbed complainant in the groin area, and held the knife out at complainant as complainant was rushing back at appellant. Under the evidence, the jury could not have found appellant guilty only of aggravated assault. *See Harrell v. State,* 659 S.W.2d 825, 827 (Tex.Crim.App.1983).

Accordingly, the trial court did not err in failing to grant appellant's requested charge on aggravated assault as a lesser included offense of murder.

### Criminally Negligent Homicide

■ Appellant also argues the following elements of criminally negligent homicide were raised by the evidence (a) the causation of complainant's death, (b) by conduct that appellant should have been aware had a substantial and unjustifiable risk of causing death, (c) yet appellant failed to perceive the risk. TEX.PENAL CODE ANN. §§ 19.05(a), 6.03(d) (Vernon 1994); *Dowden v. State,* 758 S.W.2d 264, 270 (Tex.Crim.App.1988). Again, appellant points to the evidence that complainant was the physical aggressor; appellant was merely trying to ward complainant off when he drew his knife and stuck complainant in the groin; appellant did not intend to seriously injure or kill complainant; and complainant impaled himself on the

2. TEX.PENAL CODE ANN. §§ 22.01(a)(1), 22.02(a)(2) (Vernon 1994).

knife. None of this evidence indicates that appellant failed to perceive the risk that complainant might be seriously injured or killed as a result of appellant's use of the knife. *See Mendieta v. State,* 706 S.W.2d 651, 653 (Tex.Crim.App.1986). There is no evidence meriting the inclusion of a charge on criminally negligent homicide as a lesser included offense of murder in this case.

Accordingly, we overrule appellant's two points of error.

We affirm the judgment.