**Blas A. ENRIQUEZ, Appellant,**

v.

**The STATE of Texas.**

**No. 724–99.**

Court of Criminal Appeals of Texas, En Banc.

June 21, 2000.

Gilbert A. Villareal, Houston, for appellant.

Rikke Burke Graber, Asst. Dist. Atty., Houston, Matthew Paul, State's Atty., Austin, for State.

## O P I N I O N

McCORMICK, P.J., delivered the opinion of the Court in which MANSFIELD, KELLER, HOLLAND, WOMACK and KEASLER, JJ., joined.

A jury convicted appellant of delivery of between 50 and 2,000 pounds of marijuana which was packaged in 105 separate bundles. In a 2–1 decision the Court of Appeals decided appellant was entitled to a lesser-included offense jury instruction on delivery of more than 5 but less than 50 pounds of marijuana. *Enriquez v. State,* 988 S.W.2d 899, 902–03 (Tex.App.-Houston [14th Dist] 1999.

■ This case concerns the application of the second prong of the test for when a defendant is entitled to a lesser-included offense jury instruction. This prong of the test requires that the record contain some evidence *"that would permit a jury ration-*

*ally to find* that if the defendant is guilty, he is guilty only of the lesser offense." *Skinner v. State,* 956 S.W.2d 532, 543 (Tex. Cr.App.1997), cert. denied, 523 U.S. 1079, 118 S.Ct. 1526, 140 L.Ed.2d 677 (1998) (emphasis in original). In applying this prong of the test, the appellate court must examine the entire record instead of plucking certain evidence from the record and examining it in a vacuum. See *Ramos v. State,* 865 S.W.2d 463, 465 (Tex.Cr.App. 1993).

■ The Court of Appeals decided appellant was entitled to a lesser-included offense jury instruction on delivery of more than 5 but less than 50 pounds of marijuana because the prosecution's chemist "only testified with certainty that she opened, examined, and chemically tested the contents of one bundle weighing 7.44 pounds." *Enriquez,* 988 S.W.2d at 903; see *Gabriel v. State,* 900 S.W.2d 721, 722 (Tex.Cr.App.1995) (testing substances by random sampling goes to the weight jury may give to the tested substances in determining whether the untested substance is the same as the tested substance).[1] On direct examination, however, this chemist testified that she analyzed samples from all 105 bundles. For example,

"Q. Is some sort of test actually done on each bundle?

"A. Yes. Of course, we do the weight and then we take samples from each of the bundles and a portion of those are maybe grouped together to test microscopically and chemically."

Immediately after this, the chemist testified that each bundle weighed between 3.6 and 8.5 pounds. In reference to one

---

1. We would be inclined to agree with the Court of Appeals that had the chemist affirmatively testified that she analyzed a sample from only the one bundle weighing 7.44 pounds, then, pursuant to *Gabriel,* appellant would have been entitled to a lesser-included offense instruction on delivery of more than 5 but less than 50 pounds of marijuana because this testimony would have been "some evidence directly germane" to the lesser-included offense though it is difficult to perceive

how appellant would have been harmed from the absence of the lesser-included offense instruction. See *Skinner,* 956 S.W.2d at 543; *Gabriel,* 900 S.W.2d at 722. If the chemist's testimony is that she analyzed a sample from each bundle, then appellant would not have been entitled to any lesser-included offense instruction. See *id.* (not enough that the jury may disbelieve crucial evidence pertaining to the greater offense).

specific bundle, the chemist testified that "the samples" were taken from this bundle and that it weighed 7.44 pounds.

"Q. Were the samples taken from this bundle?

"A. Yes, I'm trying to see if there was another one. Sometimes we do it under the seal. I know it was done here though.

"Q. From your record can you tell us what the weight of that bundle was?

"A. That bundle at that time was 7.44 pounds.

"Q. What were the various weights of the bundles?

"A. They ranged up to eight pounds or a little over eight pounds down to some in the three pounds. I think the largest was maybe eight and a half and the smallest was around 3.6 pounds from my notes.

"Q. Who was it that submitted the evidence to the lab?

"A. I believe it was Officer Smith.

"Q. *Based on the tests that you ran on a hundred and five bundles that were submitted,* were you able to form an opinion as to what was in the bundles?

"A. Yes, I did." (Emphasis Supplied).

A fair reading of the chemist's testimony on cross-examination indicates that she could not personally recall analyzing a sample from each bundle because "a lot of things [had] happened in [her] life over the last two years." She also testified that her normal practice was to analyze a sample from each bundle.

"Q. If I would ask you right now if you can remember exactly looking at each bundle, could you remember that from two years ago?

"A. Sir, I can't tell you I remember exactly everything that was done. I can remember part of the case. I remember these bundles. I remember black and white plastic bundles. I can remember

that it was wrapped in this larger thing. I can remember that I took representative samples and examined them microscopically and chemically. I would like to think that I would take one from every single bundle because that's what is usually done. *I can't tell you that I microscopically examined every single sample from a hundred and five bundles.* I just can't recall today but I can tell you what I usually do." (Emphasis Supplied).[2]

On redirect examination, the chemist testified that her usual procedures were to analyze a sample from each bundle and that from her memory she analyzed "some type of sample" from each bundle.

"Q. In your procedures, tests are done on each bundle?

"A. Yes, ma'am. I test it microscopically and chemically. This is what I always did. From my memory I looked at every single bundle and I did take some type of sample and analyze (sic) it."

Based on an examination of the entire record, the chemist consistently testified that she analyzed a sample from each bundle. Regarding the bundle weighing 7.44 pounds, the chemist provided no testimony either on direct or on cross-examination that this was the only bundle from which a sample was analyzed. Even if it somehow could be inferred from the chemist's testimony about the bundle weighing 7.44 pounds that this was the only bundle from which a sample was analyzed, an appellate court would have to pluck this testimony from the record and examine it in a vacuum to decide that it raised a fact issue on whether appellant is guilty only of delivery of more than 5 but less than 50 pounds of marijuana. See *Ramos,* 865 S.W.2d at 465.

And, deciding that appellant was entitled to a lesser-included offense instruction on delivery of any amount of marijuana less

---

**2.** The emphasized testimony could literally be read as saying that the chemist chemically but not microscopically analyzed a sample from each bundle.

than the amount charged also would require plucking a single statement from the chemist's cross-examination testimony ("I can't tell you that I microscopically examined every single sample from a hundred and five bundles") and examining it in a vacuum. Also, plucking this portion of the chemist's cross-examination testimony from the record and examining it in a vacuum does not raise any fact issue on whether appellant is guilty only of delivery of more than 5 but less than 50 pounds of marijuana. The only fact issue this cross-examination testimony arguably raises is that the chemist did not analyze a sample from an unknown number of the bundles.

The judgment of the Court of Appeals is reversed and the judgment of the trial court is affirmed.

PRICE, J., concurs in the result.

MEYERS, J., dissents.

JOHNSON, J., filed a dissenting opinion in which MEYERS, J., joined.

I respectfully dissent. The majority states that "the appellate court must examine the entire record instead of plucking certain evidence from the record and examining it in a vacuum." *Ante*, at 278. Yet, the majority appears to be "plucking."

According to the Court of Appeals' opinion note, the evidence established that the chemist tested the contents of one of the bundles recovered; but that she did not chemically test the other bundles. *Enriquez v. State*, 988 S.W.2d 899, 903 (Tex. App.—Houston [14 th Dist.] 1999). As the majority notes, there was more to the chemist's testimony than this. On direct examination, the relevant testimony of the chemist was:

Q. Is some sort of test actually done on each bundle?

A. Yes. Of course, we do the weight and then we take samples from each of the bundles and a portion of those are maybe grouped together to test microscopically and chemically?

Q. Were the samples taken from this bundle?

A. Yes, I'm trying to see if there was another one. Sometimes we do it under the seal. I know it was done here though.

* * *

Q. Based on the tests that you ran on a hundred and five bundles that were submitted, were you able to form an opinion as to what was in the bundles?

A. Yes, I did.

Q. What was that?

A. Marijuana was present in the plant material.

On redirect, the relevant testimony was:

Q. In your procedures, tests are done on each bundle?

A. Yes, ma'am, I test it microscopically and chemically. This is what I always did. From my memory I looked at every single bundle and I did take some type of sample and analyze it.

Q. For the jury could you show how you did that?

A. Yes. Usually I would do like this and there's a clear plastic wrap underneath the duct tape. It's like these bundles were made up in some type of compactor. Of course, I've never been there when these have been compacted, but I assume that's what they do. They are in compressed-type bundles.

Taken in isolation, this testimony indicates that the chemist did state that she actually took and tested samples from all of the bundles recovered. However, her testimony on cross-examination significantly undercut those assertions:

Q. Ms. Lind, are you saying that you opened up each of the hundred and five bundles themselves?

A. To tell you the truth, I'm kind of vague about this because it was over two years ago and a lot of things have happened in my life over the last two years.

From my notes I know there were a hundred and five bundles and I have notations of what my microscopic examination was and the fact that I examined them.

Q. So you're saying that you opened each individual bundle?

A. No, I didn't take apart each one if that's what you mean. I didn't do that.

Q. Are you saying that you opened up each bundle and took a sample from each of the hundred and five packages?

A. I don't think I understand what you're saying. I'm a little confused.

Q. Did you take a representative sample from each bundle? Did you actually open each bundle individually?

A. Well, I can't remember. I can tell you what I usually do.

Q. If I would ask you right now if you can remember exactly looking at each bundle, could you remember that from two years ago?

A. Sir, I can't tell you I remember exactly everything that was done. I can remember part of the case. I remember these bundles. I remember black and white plastic bundles. I can remember that it was wrapped in this larger thing. I can remember that I took representative samples and examined them microscopically and chemically. I would like to think that I would take one from every single bundle because that's what is usually done. I can't tell you that I microscopically examined every single sample from a hundred and five bundles. I just can't recall today but I can tell you what I usually do.

Q. You mentioned samples. How much of a sample would you take from each bundle like that or package or whatever you want to call it?

A. Usually I take a pretty good size. I would say I'd take at least twenty-five milligrams from each. Sometimes I take more than that. I just can't recall, sir. Maybe I'd even take fifty milligrams.

Q. And I believe each one would be assigned a 31?

A. Yes, sir.

Q. Did each bundle get assigned a letter like that?

A. Yes, sir, it certainly did.

Q. Do you have any indication that says how much of a sample was taken from each bundle?

A. No, I don't have anything like that on this sheet. I have the weight that they were noted at and then I have all the weight together.

Q. When you say you took an average of about twenty-five milligrams, would it be that maybe some were more and some were less of each individual sample from each individual bundle?

A. Yes, sir.

Q. Did you remove or do any kind of exam to remove any stems or stick in each of those bundles?

A. Well, probably ones that I did a tear on.

Q. Did you open all of them?

A. Well, not in the sense that I took the duct tape off and examined the whole package. No, I did not.

Q. How many did you do that in?

A. I don't recall, sir. All I know is what I recall today from my notes and I think I seen three photographs. I can only tell you what my normal procedure was.

Considering the *entire* testimony of the chemist on this matter, the majority's assertion that "the chemist consistently testified that she analyzed a sample from each bundle" fails.[1] Instead, the chemist testi-

---

[1]. *Ante,* at 279. The majority appears to acknowledge this when it states that "[t]he only fact issue this cross-examination testimony arguably raises is that the chemist did not analyze a sample from an unknown number of the bundles." *Ante,* at 280. This statement is directly contrary to its earlier statement that the chemist testified that she analyzed a sample from each bundle.

fied that, as a matter of procedure, she usually tested all of the bundles delivered to her in a given case. She was unable to state that she had actually tested all of the bundles delivered to her in the instant case.

Given this, the Court of Appeals reached the correct result. As a plurality of this court has stated, "[t]he manner of testing the substances by random sampling goes only to the weight the jury may give to the tested substances in determining [whether] the untested substance is the same as the tested substance." *Gabriel v. State,* 900 S.W.2d 721, 722 (Tex.Crim.App.1995) (plurality).

A defendant is entitled to an instruction on a lesser–included offense where the proof for the offense charged includes the proof necessary to establish the lesser–included offense and there is <u>some</u> evidence in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser–included offense. *Forest v. State,* 989 S.W.2d 365, 367 (Tex.Crim.App.1999). In the instant case, appellant was charged with and convicted of the offense of delivery of between fifty and two thousand pounds of marihuana. *See* Tex. Health & Safety Code § 481.120(a) & (b)(5). The Court of Appeals and the state agreed that, in the instant case, the offense of delivery of between five and fifty pounds of marihuana, an offense under Tex Health & Safety Code § 481.120(a) & (b)(4), is a lesser–included offense of the offense of delivery of between fifty and two thousand pounds of marihuana. *Enriquez,* 988 S.W.2d at 902. Thus, the issue is whether there is <u>some</u> evidence in the record that, depending on the weight given to it by the jury, could permit a rational jury to find that if the defendant is guilty, he is guilty only of the lesser–included offense. Because the jury could have rationally found that the chemist actually tested a number of bundles which in aggregate totaled fewer than fifty pounds of marihuana, it could have found that the

state proved, beyond a reasonable doubt, only that appellant delivered fewer than fifty pounds of marihuana. As such, appellant was entitled to an instruction on this lesser–included offense. I dissent.