Affirmed and Memorandum Opinion filed January 20, 2009








Affirmed and Memorandum Opinion filed January 20,
2009.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-08-00265-CR

_______________

 

TERZANDRO TERRELL JAMES-BAINES, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

                                                                                                                                               


On Appeal from the 182nd District Court

Harris County, Texas

Trial Court Cause No. 1125974

                                                                                                                                               


 

M E M O R A N D U M  O P I N I O N

 








Appellant,
Terzandro Terrell James-Baines, was indicted for murder.  A jury found him
guilty of the lesser-included offense of manslaughter and assessed punishment
at ten years= confinement.  The trial court sentenced him accordingly.  On appeal, he
raises the following issues: (a) whether the trial court erred in denying his
requests that the lesser-included offenses of (1) criminally negligent homicide
and (2) aggravated assault be included in the charge; and (b) whether he was
egregiously harmed by the trial court=s failure (1) to instruct the jury on
his right to defend against multiple assailants and (b) at the punishment
phase, to give a reasonable doubt instruction regarding proof of extraneous
offenses.  Because our disposition is based on clearly settled law, we issue this
memorandum opinion and affirm.  See Tex. R. App. P. 47.4.

Factual Background[1]

On a
summer evening, outside a Houston church, appellant stabbed fifteen-year-old
Jabot Phillips in the chest, causing Phillips=s death.  Appellant and Phillips knew
each other from church and had loaned each other items. The stabbing occurred
during a fight over some loaned property.

At
trial, the State called three principal witnesses to the events leading up to,
and during, the fight.  These witnesses also knew appellant and Phillips from
church.  The witnesses were Cornelius Davis, who conveyed messages between
appellant and Phillips on the day of the fight and accompanied Phillips to the
fight; Aunesha Jackson, appellant=s girlfriend; and James Riley, who
followed Phillips and Davis to the fight.  The teenagers were at the church to
participate in, or watch, the praise dance practice.

Earlier
in the evening, Davis had heard a conversation between Phillips and appellant,
in which Phillips asked appellant to return a compact disc.  Appellant refused
to do so.  Later Phillips sent Davis to the church to tell appellant Ahe was going to beat him up@ if Davis did not bring the compact
disc back to Phillips.  Davis conveyed the message, and appellant became upset,
telling Davis to Ago get@ Phillips.

Jackson
and the pastor=s daughter, Brittany Reason, were present during the conversation between
Davis and appellant.  Jackson testified appellant appeared angry after the
conversation with Davis.  Appellant pulled a pocket knife from his pocket,
displayed the blade, and said, AI=m tired of him messing with me.@ Jackson thought appellant intended
to stab Phillips.  She and Brittany told appellant to put the knife away, and
he complied.








Davis
subsequently returned to the church with Phillips.  Phillips=s friend, James Riley, followed
them.  When Phillips approached appellant, appellant repeated three times, A[S]o, you say you=re going to beat me up.@  Phillips said he was Ajust playing,@ but offered to fight if appellant
wanted to fight.

Phillips
removed his shirt and handed the shirt, his do-rag, and a compact disc player
to Riley.  Appellant walked to the back of the church, removed his own shirt,
and placed it on the ground.  Riley and Jackson believed the two intended to
fight.[2]

After
appellant placed his shirt on the ground, Phillips approached him and struck
him once in the face with his fist.  Appellant then swung at Phillips, stabbing
him in the chest.  None of the witnesses saw the knife; and, according to
Jackson, appellant did not warn Phillips he had one.  After realizing he had
been stabbed, Phillips grabbed his side, declaring,  A[M]an, you don=t play fair.  You don=t fight fair.@  Phillips leaned against a car, then
went  into the church, collapsing near the doorway.  The fight lasted about
thirty seconds.

During
the incident, Riley stood the same distance from appellant and Phillips as did
Jackson.  Riley did not remove his shirt.  He held Phillips=s shirt and do-rag throughout the
encounter, but did set the compact disc player down.  Jackson and Davis
testified that Riley did not approach, swing at, or attempt to grab,
appellant.  Both, however, also testified they thought Riley might enter the
fight to assist Phillips.  Riley=s placing the disc player on the
ground caused Jackson to fear Riley intended to fight.  Davis testified Riley
told him he would not let appellant fight Phillips, causing Davis to believe
Riley intended to participate.  Davis also testified, because he (Davis)
believed Riley might enter the fight, he thought appellant might also have
believed it.  Riley, however, denied he intended to participate because he
considered it a one-on-one fight.








In
addition to Jackson, Davis, and Riley, the State called Officer Bart Nabors,
who investigated the case and videotaped appellant=s custodial statement, and assistant
medical examiner, Marissa Feeney, who performed the autopsy on Phillips=s body.[3] 
In the videotaped statement, which was played to the jury, appellant explained
that he and Phillips had other arguments that had not resulted in a physical
altercation.  Although Phillips had wanted to fight appellant, appellant chose
not to participate.

Appellant
explained the argument at church resulted from an exchange of sunglasses and
compact discs, and he recalled Davis telling him if appellant did not return
the compact discs the next time appellant saw Phillips, Phillips would Abeat [appellant] up.@ Appellant admitted removing his
shirt and placing it by the church stairs.  He said Phillips then approached
him and hit him on the cheek.  Appellant admitted he used a folding pocketknife
to stab Phillips.  Appellant claimed he pulled the knife and opened it after
Phillips hit him.  Appellant did not know where he stabbed Phillips, but
admitted he Ajust swung the knife at him.@  He then saw Phillips grab his left
side.

Appellant
also admitted he threw the knife into some bushes because Athat was my first time doing
something like that . . . I was kind of like shocked . . . . And I didn=t know he was gonna . . . be alright.@ Appellant claimed he panicked.  He
admitted he was angry initially and then became frightened after the stabbing
because he knew Phillips could pass out from excessive blood loss.  Appellant
denied being frightened during the fight, stating he had not participated in a
fight in a Along, long, long time@ and did not like to fight.

Appellant
claimed Phillips was previously involved in a physical altercation with a girl
from the church.  He believed Phillips and Riley Alike[d] to jump people.@  Nevertheless, he did not indicate
he considered Riley a threat during his fight with Phillips.








Assistant
medical examiner, Marissa Feeney, testified Phillips died from a stab wound to
the chest with penetration of the heart.  The wound was three to five inches
deep, front to back, and aimed slightly upward.  Feeney opined the wound was
caused by a knife.[4]  Feeney
explained Phillips would have stopped functioning normally within a minute of
receiving the injury and would have died shortly thereafter.  She considered
the knife that had been recovered from the scene consistent with the wound and
testified it was a deadly weapon.

Appellant
did not testify.  He called Bridget Reason, co-pastor of the church, Marlan
Sampson, the deacon, Ray Reason, the pastor, and Delores Campbell, a church
member.  Bridget Reason testified she knew Phillips as a person who caused
problems or fights at the church.  Phillips had admitted slapping his
girlfriend.  Other than the day of the incident with Phillips, she had no
difficulties with appellant.  After the fight, she saw appellant standing
outside.  Appellant looked as if he were Acoming down,@ and told her Phillips had been
picking on him and appellant was tired of it.

Sampson
described Phillips as Ahot headed.@  In contrast, he described appellant as a peace maker.

Ray
Reason testified he had talked with Phillips about his attitude.  Ray had also
told appellant not to bring his knife to church.

Campbell
testified that, in her opinion, appellant was not violent and was not a
gangster.  She had never heard of appellant doing anything violent.








Discussion

A.        Denial of Appellant=s Requests for Lesser-included
Offenses

In issue
one, appellant contends the trial court erred in denying his request for an
instruction on criminally negligent homicide.  In issue two, he argues the
trial court erred in denying his request for an instruction on aggravated
assault.

We apply
the following two-pronged test to determine whether a trial court is required
to submit a lesser-included offense instruction:  (1) the lesser-included
offense must be included within the proof necessary to establish the offense
charged, and (2) some evidence must exist in the record that, if the defendant
is guilty, he is guilty of only the lesser-included offense.  Rousseau v.
State, 855 S.W.2d 666, 672 (Tex. Crim. App. 1993).  If the defendant
presents more than a scintilla of evidence sufficient for a rational jury to
find him guilty of the lesser-included offense, then he is entitled to a
lesser-included offense instruction.  Forest v. State, 989 S.W.2d 365,
367 (Tex. Crim. App. 1999).  We review all the evidence introduced at trial to
determine whether the trial court erred by failing to instruct the jury on a
lesser-included offense.  Enriquez v. State, 21 S.W.3d 277, 278 (Tex.
Crim. App. 2000).








A person
commits murder if he Aintentionally or knowingly causes the death of an individual
[or] intends to cause serious bodily injury and commits an act clearly
dangerous to human life that causes the death of an individual . . . .@  Tex. Penal Code Ann. ' 19.02(b)(1), (2) (Vernon 2003).  A
person commits manslaughter if he Arecklessly causes the death of an
individual,@ and commits criminally negligent homicide if he Acauses the death of an individual by
criminal negligence.@  Id. '' 19.04(a), .05(a).  Finally, a person commits aggravated
assault if he Aintentionally, knowingly, or recklessly@ causes Aserious bodily injury@ to another.  See Tex. Penal
Code Ann. '' 22.01(a)(1), .02(a)(1) (Vernon Supp.
2008).[5]

The
State concedes both criminally negligent homicide and aggravated assault meet
the first prong of the test for submission of a lesser-included offense of the
charged offense of murder.  The State, however, argues the evidence in the
present case did not support submission of either offense, i.e., the
evidence did not show appellant was guilty only of the lesser offense.








Issue
one: criminally negligent homicide.  Both manslaughter and negligent homicide differ from the
charged offense of murder because a less culpable mental state suffices to
establish their commission.  See Tex. Code Crim. Proc. Ann. art. 37.09(3) (Vernon 2006)
(providing offense is lesser-included offense if it differs from charged
offense only in respect that less culpable mental state suffices to establish
its commission);  Saunders v. State, 913 S.W.2d 564, 572 (Tex. Crim.
App. 1995) (stating both involuntary manslaughter and negligent homicide are
lesser-included offenses of murder).  The recklessness element of manslaughter,
of which the jury convicted appellant, is Asatisfied by evidence showing that the
defendant consciously disregarded a known substantial and unjustifiable risk that
serious bodily injury would occur.@  Johnson v. State, 915 S.W.2d
653, 658 (Tex. App.CHouston [14th Dist.] 1996, pet. ref=d) (emphasis added).  In contrast, A[t]he key to criminal negligence is the
failure of the actor to perceive the risk created by his conduct.@  Mendieta v. State, 706
S.W.2d 651, 652 (Tex. Crim. App. 1986) (emphasis added).  In involuntary
manslaughter, Athe accused must be aware of the risk, and consciously disregard it.  In
[criminally negligent homicide] it must be found that, though he ought to have
been aware of the risk, he was not.@  Saunders, 913 S.W.2d at
572.   Before a charge on criminally negligent homicide is required, the record
must contain evidence showing an unawareness of the risk.  Jackson v. State,
248 S.W.3d 369, 371B72 (Tex. App.CHouston [1st Dist.] 2007, pet. ref=d).

In the
trial court, appellant argued that Athe deceased struck [appellant] from
behind as he was turning around, it could be perceived . . . he turned around
and thrust the knife in a neglect [sic] manner.@  On appeal, appellant contends Davis=s testimony that Phillips Asucker punch[ed]@ appellant warrants the instruction.

None of
the witnesses saw the knife during the fight.  Earlier, appellant had taken the
knife from his pocket, but Jackson testified appellant returned it to his
pocket at that time.  In his statement, appellant admitted Phillips hit him,
then appellant Awent right to [his] back pocket,@ pulled out the knife, and opened it.








The
evidence in this case is virtually identical to Mendieta,  706 S.W.2d at
651B52.  The defendant in Mendieta
was involved in a fight in which the other participant pushed the defendant.  Id.
at 651.  When the defendant was pushed a second time, he fell and pulled a
knife from his pocket, opened it, and swung it.  Id.  The court of
criminal appeals summarized:

As the
Court of Appeals correctly pointed out in its opinion, appellant testified that
he pulled out his knife and began swinging it in order to keep the deceased
away from him.  This testimony shows that appellant was aware of the risk he
was creating. . . . [T]he evidence entitled appellant to a charge on
involuntary manslaughter, but it did not raise criminally negligent homicide. 
Because there is nothing in the evidence presented which indicates that
appellant was unaware of the risk his conduct created, we find that the issue
of criminally negligent homicide was not raised and the trial court did not err
in refusing to give appellant=s requested
charge.

 

Id. at 653.

Similarly,
the evidence in this case did not raise the issue of criminally negligent
homicide. The trial court correctly denied appellant=s request.  We therefore overrule
appellant=s first issue.

Issue
two: aggravated assault.  When there is no evidence from which a rational jury could conclude a
defendant did other than cause the death of the victim, he is not entitled to a
lesser-included offense instruction on aggravated assault.  See Jackson v.
State, 992 S.W.2d 469, 475 (Tex. Crim. App. 1999); see also Armstrong v.
State, 179 S.W.3d 84, 87 (Tex. App.CFort Worth 2005, no pet.) (holding
defendant not entitled to instruction on aggravated assault when he did not
dispute causing complainant=s death and there was no evidence complainant suffered a
lesser form of serious bodily injury).








In the
present case, appellant admitted that he stabbed Phillips.  There was no
evidence anyone other than appellant was close to Phillips during the fight. 
The medical examiner testified Phillips=s death was caused by a stab wound to
the chest. Accordingly,  there is no evidence from which a rational jury could
conclude appellant did anything other than cause Phillips=s death.  See Bergeron v. State,
981 S.W.2d 748, 752 (Tex. App.CHouston [1st Dist.] 1998, pet. ref=d) (reasoning, if defendant
intentionally or knowingly caused injury that resulted in victim=s death, defendant would have
committed both aggravated assault and murder as charged in the indictment; and
holding jury could not have found defendant guilty only of aggravated assault
when evidence showed he intentionally stabbed murder victim in groin area and
held knife out at victim as victim was rushing back at him).

The
trial court correctly denied appellant=s request for aggravated assault.  See
id.  We therefore overrule appellant=s second issue.

B.        Failure to Instruct Absent a Request

In issue
three, appellant argues he was egregiously harmed by the trial court=s failure to instruct the jury on his
right to defend against multiple assailants.  In issue four, appellant argues
he was egregiously harmed by the trial court=s failure, in the punishment phase,
to instruct on reasonable doubt relative to extraneous offenses.








Appellant
thus acknowledges he did not request such instructions; and, if the trial court
erred, appellant has the burden to show egregious harm under the standard of Almanza
v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984).  See Tex. Code
Crim. Proc. Ann. art. 36.19 (Vernon 2006) (regarding standard of appellate
review when defendant has disregarded requirements, including requirement of
objection to charge); Zarco v. State, 210 S.W.3d 816, 823 (Tex. App.CHouston [14th Dist.] 2006, no pet.)
(applying Almanza standard to trial court=s failure to give reasonable doubt
instruction relative to extraneous offenses at punishment phase); Mata v.
State, 939 S.W.2d 719, 722B23 (Tex. App.CWaco 1997, no pet.) (applying Almanza standard to
trial court=s failure to instruct on right to defend against multiple defendants). 
Errors causing egregious harm are those that affect the very basis of the case,
deprive the defendant of a valuable right, or vitally affect a defense theory. 
Hutch v. State, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996).  Egregious
harm is present whenever a reviewing court concludes the case for conviction or
punishment was actually made clearly and significantly more persuasive by the
error.  Saunders v. State, 817 S.W.2d 688, 692 (Tex. Crim. App. 1991). 

Egregious
harm is a difficult standard and must be proved on a case-by-case basis.  Ellison
v. State, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002).  In determining
whether lack of an instruction caused egregious harm, we consider the following
four factors:  (1) Athe entire jury charge,@ (2) Athe state of the evidence, including
the contested issues and weight of probative evidence,@ (3) Athe argument of counsel,@ and (4) Aany other relevant information
revealed by the record of the trial as a whole.@  Almanza, 686 S.W.2d at 171. 

Issue
three: multiple assailants.  Assuming, without deciding, the trial court erred in not
giving a multiple assailants charge, we conclude appellant has not shown he was
egregiously harmed.[6]  Regarding
the first Almanza factor, the jury was instructed on the law of
self-defense, including the use of force and deadly force against another.  In
the context of this instruction, the jury was informed, A[I]t is not necessary that there be
an actual attack or attempted attack, as a person has a right to defend his
life and person from apparent danger as fully and to the same extent as he
would had the danger been real, provided that he acted upon a reasonable apprehension
of danger . . . .@  The jury was further instructed that, to determine real or
apparent danger, it Ashould consider all the facts and circumstances in the case
in evidence . . . show[ing] the condition of the mind of the defendant at the
time of the occurrence in question . . . .@  Thus, although the application paragraph
referred to justification of appellant=s use of force only against Phillips,
the instruction, as a whole, informed the jury it could look to Aall the facts and circumstances in
the case@ to determine appellant=s state of mind.








Second,
although appellant=s counsel elicited testimony from Jackson and Davis that they
believed Riley might join the fight and that appellant might have entertained a
similar belief, uncontroverted evidence showed Riley was about the same
distance from appellant and Phillips as was Jackson.  Moreover, although Riley
put the compact disc player down, he continued to hold Phillips=s shirt and do-rag, thus impeding his
ability to assist Phillips.

Third,
during closing argument, both the State and appellant referred to Riley during
their discussions about self-defense.  Appellant argued,

Now how does [apparent danger] apply in this particular case? . . . 
Aunesha Jackson told you she thought [Riley] who=s two feet away, was going to jump in.  That=s two on one.  Cornelius Davis also said that he
thought [Riley] was going to jump in.  Again, that=s two on one.

 

The State countered that
the jury should not consider Riley a threat because he was only thirteen and
was not acting as if he intended to participate.

Finally,
the jury rejected appellant=s self-defense claim as contained in the jury charge. 
Instead, the jury returned a verdict of guilty to manslaughter.  The jury=s verdict suggests they would have
rejected a multiple assailant defense even had an instruction been given.  See
Dickey v. State, 22 S.W.3d 490, 493 (Tex. Crim. App. 1999) (Keller, J.,
concurring) (opining the jury=s rejection of theory defendant acted in self defense against
victim necessarily showed jury would also have rejected multiple assailants
theory).

Even if
we assume the trial court erred in failing to give a multiple assailants
instruction, we conclude appellant was not egregiously harmed.  Accordingly, we
overrule appellant=s third issue.








Issue
four: failure to instruct on reasonable doubt relative to extraneous offense
evidence. 
Appellant=s fourth issue involves evidence, elicited at the punishment phase,
indicating appellant had been involved in fights while in jail awaiting trial
on the present offense.  If evidence of an extraneous offense is before the
jury, Texas Code of Criminal Procedure article 37.07, section 3(a), requires
the court to instruct the jurors they may not consider the extraneous offense
in assessing the defendant=s punishment unless the offense was proved beyond a
reasonable doubt.  Tex. Code Crim. Proc. Ann.
art. 37.07, ' 3(a)(1) (Vernon Supp. 2008); Huizar v. State, 12 S.W.3d 479, 483B84 (Tex. Crim. App. 2000).  The State
concedes the trial court erred in not giving a reasonable doubt instruction.  See
Huizar, 12 S.W.3d at 484.  Because appellant did not request such an
instruction or object to its omission, we apply the Almanza harm
analysis, set forth above.  See id. at 484B85.

The
State elicited the extraneous offense evidence during cross-examination of
appellant=s grandmother, Chalethea Whittaker, who reared appellant.  On direct
examination, Whittaker had testified appellant was a good child and had never
been convicted of a felony.  Whittaker testified, if the jury recommended
probation, appellant would live with her and she would ensure he did not
violate the conditions of his probation.  She concluded by saying she believed
appellant would be able to complete probation and be a productive citizen.

On
cross-examination, Whittaker testified that she did not believe appellant
stabbed Phillips on purpose and she thought it was an accident.  Whittaker
repeated this opinion and added, ABut knowing him and knowing the type
he is, he wouldn=t go after nobody to hurt them intentionally.@  The State then contended Whittaker
had Aopened the door@ to evidence about the jailhouse
fights and asked a series of question related to the purported fights.

Whittaker
affirmed she knew appellant had been fighting in jail and had been involved in
a riot.  In response to whether she knew he had been in three fights, Whittaker
said she knew he had Abeen jumped.@  She denied knowing he had been bragging about his fighting
or that he had laughed about it.  The series of questions ended when the State
asked, Aso knowing that he could go to jail
already, he=s still involved in fights at the jail?@  Whittaker responded, AYeah, because that=s a whole different setting.  Over
there you get hit all the time.  They jump on you, too.  He=s even been hit by an officer.@








Appellant
affirmatively stated that he had no objections to the punishment phase charge,
which did not include an instruction requiring the jury to find that appellant=s participation in jailhouse fights
had been proved beyond a reasonable doubt.  We turn now to an analysis of the
four Almanza factors.

Considering
the entire jury charge, we first observe that, during the guilt/innocense
phase, the court instructed the jury, AThe burden of proof in all criminal
cases rests upon the State throughout the trial and never shifts to the
defendant.  All persons are presumed to be innocent and no person may be
convicted of an offense unless each element of the offense is proved beyond a
reasonable doubt.@  During the punishment phase, the court instructed the jury,
AThe burden of proof in all criminal
cases rests upon the State throughout the trial and never shifts to the
defendant.@  Although the jury did not hear the punishment phase instructions the
same day it heard the guilt/innocence instructions, we nevertheless conclude it
would have followed the punishment phase instruction and held the State to the
same burden of proof it did at trial.[7]  See
Gholson v. State, 5 S.W.3d 266, 271 (Tex. App.CHouston [14th Dist.] 1999, pet. ref=d) (holding no egregious harm shown
when jury, during guilt/innocence phase, received proper reasonable doubt
instruction regarding unadjudicated acts and received punishment charge the
same day).

Regarding
the second Almanza factor, a principal contested issue at sentencing was
whether the defendant was an appropriate candidate for community supervision. 
The State argued for fifteen years= confinement; appellant, for
community supervision.  The jury sentenced appellant to ten years, thus
allowing community supervision had the jury so decided.  See Tex. Code
Crim. Proc. Ann. art. 42.12 ' 4(d)(1) (Vernon Supp. 2008).








The
evidence of appellant=s participation in jailhouse fights consisted of his
grandmother=s reluctant admission she knew he had been fighting and in a riot while
he was in jail.  The State offered no other evidence of the alleged fighting. 
In closing, appellant  emphasized the State=s lack of any documentary evidence
regarding the fights.  The State responded, AHow many folks you think I=m gong to be able to get on that
stand and snitch?  Do you think I=m going to be able to find anybody? 
No.  But does that mean it didn=t happen?  No.@  Nevertheless, appellant does not
argue the evidence of the jailhouse fighting was insufficient, but only that
the trial court erred in not giving the reasonable doubt instruction.  See 
Arnold v. State, 7 S.W.3d 832, 835 (Tex. App.CEastland 1999, pet. ref=d) (holding defendant not egregiously
harmed by court=s failure to instruct because, among other factors, defendant
did not contend evidence was insufficient to prove beyond a reasonable doubt he
had committed extraneous offenses, but only that instruction was not given). 

Relevant
to the third Almanza factor, the State used the extraneous offense
evidence to argue appellant should not be granted probation.  The State argued,
A[Defense counsel is] telling you he
should get probation.  But non-violent people don=t stab folks.  Non-violent people don=t carry weapons.  And non-violent
people having been charged with murder and sitting in the Harris County jail,
don=t get into fights in jail.@

The
State, however, did not rely solely on the extraneous offense evidence to argue
for a fifteen year sentence.  Instead, the State also emphasized the violent
nature of the offense, the age of the victim, the fact the victim was appellant=s friend, and the fact the killing
had occurred outside a church in view of friends of the participants.








Regarding
the fourth factor, the crime involved violence.  It was undisputed appellant
stabbed Phillips so severely Phillips would have lost the ability to function
within a minute of being injured.  The offense of which the jury found
appellant guilty carried a potential penalty of up to twenty years.  The State
asked for fifteen years, and the jury assessed ten.  The jury=s assessment of ten years was within
the mid-range of punishment for manslaughter and, therefore, demonstrates lack
of egregious harm to appellant.  See Allen v. State, 47 S.W.3d 47, 53
(Tex. App.CFort Worth 2001, pet. ref=d) (reasoning jury=s sentence was within range of
punishment for attempted murder and, therefore, did not demonstrate Aegregious harm@ to defendant).

Considering
the totality of the evidence and the record on appeal, we conclude the State=s case for punishment was not made
clearly and significantly more persuasive by the error.  See Saunders,
817 S.W.2d at 692.  Accordingly, we overrule appellant=s fourth issue.

Having
overruled appellant=s four issues, we affirm the judgment.

 

 

 

/s/        Charles W. Seymore

Justice

 

Panel consists of Chief Justice
Hedges and Justices Anderson and Seymore.

Do Not Publish C Tex. R. App. P. 47.2(b).

 

 

 

 

 

 









[1]  We set forth the relevant procedural background in
the discussion of the issues below.





[2]  There is a conflict in the testimony about how
evenly matched appellant and Phillips were.  According to Riley, both appeared
to be the same size and weight.  The church deacon, however, testified 
Phillips was two or three inches taller than appellant and Aa little bit more muscular.@





[3]  The State also called Officer Sherry Rowe, of the Houston
Crime Scene Unit, and Felix Phillips, the victim=s father.  Their testimony is not germane to the issues on appeal.





[4]  Feeney also observed an incised wound on Phillips=s upper left back, two incised wounds on his right
hand, and abrasions on his chest.





[5]  Texas Penal Code Section 6.03 defines the following
culpable mental states:

 

(a) A person acts intentionally, or with intent, with
respect to the nature of his conduct or to a result of his conduct when it is
his conscious objective or desire to engage in the conduct or cause the result.

 

(b) A person acts knowingly, or with knowledge, with
respect to the nature of his conduct or to circumstances surrounding his
conduct when he is aware of the nature of his conduct or that the circumstances
exist.  A person acts knowingly, or with knowledge, with respect to a result of
his conduct when he is aware that his conduct is reasonably certain to cause
the result.

 

(c) A person acts recklessly, or is reckless, with
respect to circumstances surrounding his conduct or the result of his conduct
when he is aware of but consciously disregards a substantial and unjustifiable
risk that the circumstances exist or the result will occur.  The risk must be
of such a nature and degree that its disregard constitutes a gross deviation
from the standard of care that an ordinary person would exercise under all the
circumstances as viewed from the actor=s
standpoint.

 

(d) A person acts with criminal negligence, or is
criminally negligent, with respect to circumstances surrounding his conduct or
the result of his conduct when he ought to be aware of a substantial and
unjustifiable risk that the circumstances exist or the result will occur.  The
risk must be of such a nature and degree that the failure to perceive it
constitutes a gross deviation from the standard of care that an ordinary person
would exercise under all the circumstances as viewed from the actor=s standpoint.

 

Tex.
Penal Code Ann. ' 6.03 (Vernon 2003).

 

 





[6]  Appellant relies on the testimony of Jackson and
Davis as raising the issue of multiple assailants.  Jackson and Davis testified
they believed Riley intended to fight.  Davis testified he believed appellant
thought the same.





[7]  The guilt/innocence phase ended March 28, 2008.  The
evidentiary portion of the trial ended the same day, but the jury was
instructed, and returned its verdict on, March 31, 2008.