Pedro **CARDONA**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 03–97–00633–CR.

Court of Appeals of Texas, Austin.

July 16, 1998.

---

Mary B. Hennessy, Brenham, for Appellant.

Charles D. Penick, Crim. Dist. Atty., Gina E. Brock, Asst. Crim. Dist. Atty., Bastrop, for State.

Before YEAKEL, C.J., and ABOUSSIE and JONES, JJ.

YEAKEL, Chief Justice.

Appellant Pedro Cardona appeals his conviction for murder. *See* Tex. Penal Code Ann. § 19.02 (West 1994). A jury convicted Cardona and assessed his punishment at life imprisonment plus a $10,000 fine. Cardona appeals his conviction on three points of error, arguing that the trial court erred in: (1) refusing to include an instruction on the lesser included offense of criminally negligent homicide, (2) overruling his motion to suppress for violation of international treaties, and (3) permitting an improper statement by the prosecutor during closing argument. We will affirm the conviction.

## BACKGROUND

On the night of April 17, 1997, two deputy sheriffs responded to a call reporting gunshots outside of Pedro Cardona's residence in Bastrop County. Upon arriving at the scene, the deputies observed a car in a ditch. They found the driver, Maria Delpillar Araujo, dead in the front seat from two gunshot wounds. Although Cardona was not initially at the scene, he drove into the driveway a few seconds after the officers arrived. The deputies removed Cardona from his car and found a .38 caliber revolver in his right pocket. Cardona's left hand was covered with a large amount of dried blood, and both officers smelled alcohol on his breath. The deputies arrested Cardona and transported him to the Bastrop County jail.

During the early morning hours of April 18, a criminal investigator interviewed Cardona, who is a Mexican national. Before questioning him, the investigator read him his *Miranda* rights. Cardona identified the woman in the car as Araujo and said that he had been involved in a romantic relationship with her for a couple of years. Cardona then indicated that he needed to talk with a lawyer before answering further questions. As the investigator prepared to leave, Cardona proceeded to talk about the events prior to the shooting. Despite the investigator's warning not to tell him further information, Cardona said that "he didn't know why he did it." The investigator subsequently left Cardona and placed a call to a Mexican consulate in order to, as he testified, "protect [Cardona's] rights as a citizen of Mexico." The first call at 5:46 a.m. was unanswered. The record does not disclose the location of the Mexican consulate to which this initial call was placed. However, later in the morning, the investigator spoke with the Mexican consulates in both San Antonio and Austin. Cardona then spoke with a representative of the Mexican consulate in Austin.

A grand jury indicted Cardona for intentionally and knowingly causing the death of Araujo by shooting her with a firearm. Cardona filed a motion to suppress evidence for violation of international treaties, specifically the Vienna Convention on Consular Relations. Cardona argued that the treaty as set out in the Vienna Convention on Consular Relations was violated when he was not informed of his right to contact the Mexican consulate or immediately given an opportunity to contact the Mexican consulate. The trial court denied the motion to suppress.

At trial, Cardona testified in his own defense. He admitted shooting at Araujo, but

claimed that he did not intentionally or knowingly kill her. He testified that on the evening of Araujo's death he stopped at an HEB grocery store with some co-workers and met Araujo inside. She departed from the store first, and when Cardona left, he saw her hugging and kissing another man in the parking lot. Cardona stated that he purchased a six-pack of beer and returned home. Araujo arrived home an hour and half later and the couple argued. Cardona left for approximately fifteen minutes to calm down. Upon his return, he saw a man running from the porch and assumed that the man had "been with" Araujo. Cardona entered the home and discovered Araujo was bathing. He confronted her again, they proceeded to argue, and he told Araujo to leave. She then slapped him and told him he "had no testicles." When Araujo left the house, Cardona took his pistol and followed her into the driveway. Araujo attempted to drive away in reverse and ended up in a ditch. Cardona testified that he shot twice at the car while it was moving toward the ditch. Cardona claimed he was thirty or forty feet away from the car when he shot, and that he wanted "to try and scare her [Araujo]." He said that at the time of the incident he was "so out of quack because of the jealousy or anger about what she said."

The State presented evidence to show that Cardona shot Araujo intentionally and knowingly at close range. A criminologist from the Texas Department of Public Safety testified that he found a microscopic fragment of glass matching the car window approximately half an inch inside the barrel of the .38 revolver. A Travis County medical examiner who performed the autopsy of Araujo's body testified about the location and angle of the gunshot wounds. The State contended that these pieces of evidence showed that Cardona could not have shot at Araujo from a distance of thirty or forty feet.

At the close of the evidence, the trial court instructed the jury on the offense of murder and the lesser included offense of manslaughter. Cardona objected to the court's failure to instruct the jury on another lesser included offense, criminally negligent homicide. The trial court overruled the objection.

During closing arguments, the prosecutor stated, "When you come back with a verdict of guilty for murder, then we'll come back and talk about some other matters in the punishment phase, but those matters such as sudden passion, such as his emotional state, whether or not he was in shock, all that brouhaha, is not for you to decide at this stage of the trial." Cardona did not object to the prosecutor's closing statement at trial.

The jury found Cardona guilty of murder. *See* Tex. Penal Code Ann. § 19.02. In accordance with the jury's assessment of punishment, the trial court sentenced Cardona to life imprisonment plus a $10,000 fine. Cardona appeals by three points of error, arguing that: (1) the trial court erred in refusing to include an instruction on the lesser included offense of criminally negligent homicide, (2) the trial court erred in overruling appellant's motion to suppress for violation of international treaties, and (3) the prosecutor's statement during closing arguments was improper.

## DISCUSSION

### Jury Instruction on Criminally Negligent Homicide

■ In determining whether appellant was entitled to a charge on the lesser included offense of criminally negligent homicide, we must apply the two-prong test set out by the court of criminal appeals in *Royster v. State*, 622 S.W.2d 442, 446 (Tex.Crim.App. 1981). The lesser included offense must be included within the proof necessary to establish the offense charged, and there must be some evidence in the record that if the defendant is guilty, he is guilty of only the lesser offense. *Royster*, 622 S.W.2d at 446. It is well established that criminally negligent homicide is a lesser included offense of murder. *Thomas v. State*, 699 S.W.2d 845 (Tex. Crim.App.1985); *Johnson v. State*, 915 S.W.2d 653 (Tex.App.—Houston [14th Dist.] 1996, pet. ref'd); *Jones v. State*, 900 S.W.2d 103 (Tex.App.—Houston [14th Dist.] 1995, no pet.); *Ybarra v. State*, 890 S.W.2d 98 (Tex. App.—San Antonio 1994, pet. ref'd); *Burnett v. State*, 865 S.W.2d 223 (Tex.App.—San Antonio 1993, pet. ref'd). Thus, the remaining

question in the case at bar is whether there was some evidence in the record that if Cardona was guilty, he was guilty of only criminally negligent homicide. We conclude that there was no evidence presented to support a charge of criminally negligent homicide.

■ A criminally negligent homicide occurs when a person causes the death of another by criminal negligence. Tex. Penal Code Ann. § 19.05(a) (West 1994). The definition of criminally negligent conduct is:

A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

Tex. Penal Code Ann. § 6.03(d) (West 1994). The difference between criminally negligent homicide and manslaughter is the culpable mental state required to establish each offense—criminal negligence for the former and recklessness for the latter. *Lewis v. State*, 529 S.W.2d 550, 553 (Tex.Crim.App. 1975). Because of the close distinction on "risk awareness" between the two, comparing recklessness and criminal negligence is helpful in determining whether evidence raises criminal negligence. *Thomas*, 699 S.W.2d at 849. In *Lewis*, the Court distinguished between the two, saying:

[Reckless conduct involves] conscious risk creation, that is, the actor is aware of the risk surrounding his conduct or the results thereof, but consciously disregards that risk ... Criminal negligence involves inattentive risk creation, that is, the actor ought to be aware of the risk surrounding his conduct or the results thereof. At the heart of reckless conduct is conscious disregard of the risk created by the actor's conduct; the key to criminal negligence is

found in the failure of the actor to perceive the risk.

*Lewis*, 529 S.W.2d at 553.

■ Every case must be examined in light of its particular facts and circumstances to determine if the defendant was unaware of the risk his conduct created and was thus only criminally negligent. The question of criminal negligence in homicide cases involving a firearm usually arises when the defendant claims that he or she did not mean to shoot the weapon in the first place. *See Thomas*, 699 S.W.2d at 845; *Salinas v. State*, 644 S.W.2d 744 (Tex.Crim.App.1983); *Simpkins v. State*, 590 S.W.2d 129 (Tex.Crim.App. 1979); *Branham v. State*, 583 S.W.2d 782 (Tex.Crim.App.1979); *Moore v. State*, 574 S.W.2d 122 (Tex.Crim.App.1978); *London v. State*, 547 S.W.2d 27 (Tex.Crim.App.1977). Even in cases where the action of firing the gun was claimed to be accidental, the court of criminal appeals has refused to require an instruction on criminal negligence when the circumstances revealed that the defendant was familiar with guns or knew the gun was loaded when he or she pointed the weapon at another person. *See Thomas*, 699 S.W.2d at 852; *Salinas*, 644 S.W.2d at 744; *Simpkins*, 590 S.W.2d at 129.

In this case, Cardona has never claimed that he accidentally pulled the trigger on the .38 revolver that killed Maria Araujo. He admits intentionally shooting the gun twice in the decedent's direction, but says he intended only to "scare her." Since Cardona admits that he shot the gun in the decedent's direction, the only instance that would require an instruction on criminal negligence would be if some evidence suggested that Cardona failed to perceive the risk that a .38 revolver could kill a human being when shot in her direction. Nothing in the record indicates that such evidence was presented.

While Cardona relies on his assertion that he wanted only to "scare" the decedent as evidence that raises the issue of criminal negligence, the evidence reveals just the opposite. If appellant knew that firing a gun at the decedent would scare her, he necessarily perceived the risk associated with shooting the gun. The question is not whether Cardona intended the result, it is whether he per-

ceived the risk. The circumstances immediately prior to the shooting indicate that, at a minimum, Cardona perceived the risk associated with the revolver and consciously chose to disregard it. Cardona and the decedent had been arguing sporadically over a period of a couple of hours, he suspected she had been with another man, and she slapped and insulted Cardona and proceeded to leave. Cardona then picked up his gun and followed the decedent outside, where he pointed the gun in her direction and pulled the trigger not only once, but *twice*, which resulted in Araujo's death. These facts support giving an instruction on manslaughter, which the trial court did in this case, because appellant's firing the gun was arguably reckless. However, the record does not support a finding that Cardona could be guilty of only criminal negligence, because the evidence does not suggest that Cardona was unaware that Araujo could possibly be injured if he shot at her with a revolver. Therefore, we hold that the trial court did not err in refusing to instruct the jury on criminally negligent homicide. Cardona's first point of error is overruled.

### Motion to Suppress for Violation of International Treaties

■ The Vienna Convention on Consular Relations guarantees to a foreign national who has been arrested the right to access his consulate and the right to be informed of such right without delay. The treaty states, in pertinent part:

> [I]f he so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State if within its consular district a national of the State is arrested or committed to prison or to custody pending trial or is detained in any other manner ... The said authorities shall inform the person concerned without delay of his/her rights under Vienna Convention, Art. 36, 21 U.S.T. at 100–101, 596 U.N.T.S. at 292.

Vienna Convention on Consular Relations, April 24, 1963, art. 36(1)(a), 21 U.S.T. 77, 100–101; 595 U.N.T.S. 261, 292 (ratified by the United States on November 24, 1969, 21 U.S.T. at 77, 596 U.N.T.S. at 262).

■ A treaty is a law of the United States to be given the same force and effect as any other law. *Hanson v. Town of Flower Mound,* 679 F.2d 497 (5th Cir.1982). Evidence obtained in violation of a provision of the constitution or laws of the State of Texas or the United States shall not be admitted as evidence against the accused in the trial of any criminal case. Tex.Code Crim. Proc. Ann. art. 38.23(a) (West Supp.1998).

Cardona contends that his statements to the criminal investigator in the early morning of April 18 should have been suppressed by the trial court because the State failed to comply with the Vienna Convention. Cardona claims the State failed, without delay, to: (1) notify the Mexican consulate after Cardona was arrested, and (2) inform him of his right to access his consulate. We disagree with the first contention, but must agree with the second.

The State notified the Mexican consulate as soon as possible after Cardona was arrested. Appellant was taken into custody in the early morning hours of April 18, 1997. Detective Robert Flores testified that he called a Mexican consulate at 5:46 a.m. on that date. Although he did not receive an answer, he continued to call different Mexican consulates until he was able to speak with someone and inform them that Cardona was being held by his department. Cardona was placed in contact with the Mexican consulate on the morning of his arrest. There was no way for Cardona to speak with his consulate sooner. In this case, the purpose of the treaty was fulfilled since communication between Cardona and the Mexican consulate was facilitated within hours of Cardona's arrest.

■ The State did, however, fail to inform Cardona without delay of his right to access the Mexican consulate. A review of the record reveals that although Detective Flores attempted to contact a Mexican consulate as soon as practicable, Cardona was not informed of his rights under the Vienna Convention, either at the time of his *Miranda* warnings or later. However, we hold that under these facts this violation does not merit reversal of the conviction.

 Texas Rule of Appellate Procedure 44.2 defines reversible error in criminal cases in the following manner:

(a) Constitutional Error. If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment.

(b) Other errors. Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.

Tex.R.App. P. 44.2. Cardona does not claim that a constitutional error was committed by the trial court, but instead contends that his statement that "he didn't know why he did it" was a damaging piece of evidence that was improperly admitted and introduced at trial. At the time Cardona made this statement, even though he had been advised not to speak until he had legal counsel, he had not been informed he could contact his consulate. Thus, we must analyze his contention in light of subsection (b) of Rule 44.2.

Cardona has not shown that the error at issue affected his "substantial rights." Cardona claims that the statement was harmful to his position at trial, *i.e.,* that he lacked the requisite mental state to support a conviction for murder or manslaughter. However, the probable impact of the Cardona's statement on the jury was negligible. The statement was mentioned only once, during the testimony of Flores. On direct examination by the prosecution, Flores testified that Cardona said "he didn't know why he did it" after giving his name and consent for his trailer to be searched. The prosecution did not dwell on the statement, and it was never mentioned again during the trial. It is doubtful that the jurors placed much weight on the statement or factored it into their evaluation of whether Cardona possessed the requisite mental state for murder or manslaughter, in light of the fact that Cardona testified at trial concerning his thought processes on the night of Araujo's death.

We conclude that the denial of Cardona's motion to suppress does not constitute reversible error under Rule 44.2. Although Cardona was not advised of his rights under the Vienna Convention, the evidence that could have been suppressed by the trial court was not notably harmful to him and was otherwise admissible. Texas courts have not examined this issue; however, we are guided by recent decisions by federal courts. In the words of the United States Supreme Court, "it is extremely doubtful that the violation [of the Vienna Convention] should result in the overturning of the final judgment of conviction without some showing that the violation had an effect on the trial." *In re Angel Francisco Breard,* —— U.S. ——, 118 S.Ct. 1352, 140 L.Ed.2d 529 (1998) (quoting *Arizona v. Fulminante,* 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)); *see also Faulder v. Johnson,* 81 F.3d 515 (5th Cir. 1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 487, 136 L.Ed.2d 380 (1996) (failure to notify criminal defendant of his or her rights under Vienna Convention does not require reversal when defendant has not been harmed). We know of no reason to conclude otherwise. As Cardona has not shown that the failure to promptly notify him of his right of access to his consulate affected a substantial right possessed by him, any error in that regard was harmless and must be disregarded. Therefore, Cardona's second point of error is overruled.

### Prosecutor's Statement During Closing Argument

 Cardona contends that the prosecutor made improper remarks during closing argument as a clear attempt to discourage the jurors from deliberating on the issue of mens rea. We do not need to address the merit of this contention because an examination of the record reveals that Cardona did not object to the prosecutor's remarks at the time they were made.

 If counsel makes an improper statement in argument, opposing counsel must object to the remark at the time it is made in order to avoid waiving error associated with the remark. Tex.R.App. P. 33.1(a)(1); *Cockrell v. State,* 933 S.W.2d 73, 89 (Tex.Crim. App.1996); *Garcia v. State,* 428 S.W.2d 334

(Tex.Crim.App.1968); *Phelps v. State*, 394 S.W.2d 814 (Tex.Crim.App.1965). It is too late to object to an improper argument at a later stage of the proceedings. *Castillo v. State*, 362 S.W.2d 320 (Tex.Crim.App.1962). Therefore, this issue is not preserved for this Court to review.

## CONCLUSION

We conclude that: (1) the trial court did not err in refusing to include a jury instruction on the lesser included offense of criminally negligent homicide, (2) any error in the trial court's denial of Cardona's motion to suppress did not affect his substantial rights and was not harmful, and (3) the propriety of the prosecutor's remarks during closing argument was not preserved for appellate review. Having overruled Cardona's points of error, we affirm the judgment of conviction.