NO. 07-01-0422-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

DECEMBER 3, 2002

_____

SHENITA CONTRELLA HARRISON,

Appellant

v.

THE STATE OF TEXAS,

Appellee

_____

FROM THE 263RD DISTRICT COURT OF HARRIS COUNTY;

NO. 849712; HON. JIM WALLACE, PRESIDING

_____

Before QUINN, REAVIS and JOHNSON, JJ.

In four issues, appellant Shenita Contrella Harrison challenges her conviction for manslaughter. In those issues, she contests the legal and factual sufficiency of the evidence to support her conviction of manslaughter as opposed to the lesser-included offense of criminally negligent homicide and the legal and factual sufficiency of the evidence to sustain a finding by the jury that she used or exhibited a deadly weapon during the commission of the offense. We affirm the judgment of the trial court.

**Background**

Appellant had lived with the victim, Freddy Evans, for about six years and was the mother of two of his children. Approximately six months prior to the offense, she learned

that he was seeing a seventeen-year-old girl named Clara. Several times, he promised to end the affair, but appellant would learn afterward that the affair was still continuing. On July 11, 2000, Freddy arrived home around midnight with the smell of alcohol on his breath. Sometime later, the phone rang, and when appellant answered it, the caller asked to speak to Freddy and identified herself as Clara. Appellant called Freddy to the phone, but as he started talking to Clara, she became upset and hung up the phone. She and Freddy then argued, and she asked him to leave. Appellant went into their bedroom to gather Freddy's clothes, and Freddy threw the phone and hit her in the leg. He was yelling at appellant and cursing her. When she looked for something to protect herself, she saw a knife on the dresser which had been left there from being used to jimmy a lock on a bedroom door. Upon picking up the knife, Freddy told her she had better not stab him. Appellant said she would not but that she wanted him out of the apartment. With both hands, he pushed her in the chest, and she fell. As she started to rise, Freddy came towards her, and she raised her hands to push him away. In the process, she stabbed Freddy, who later died from a wound to the heart.

## Issues One and Two - Legal and Factual Sufficiency

Appellant was indicted for murder, and the jury was charged with respect to murder, manslaughter, and criminally negligent homicide.[1] Appellant was convicted of manslaughter. In her first two issues, she argues the evidence is legally and factually insufficient to sustain her conviction of manslaughter as opposed to the lesser-included offense of criminally negligent homicide. We overrule both issues.

---

[1]The jury was also instructed on self-defense.

2

The standards of review applicable to determining whether evidence is legally and factually sufficient to support a conviction are well-settled. We will not reiterate them but rather refer the litigants to *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), *King v. State,* 29 S.W.3d 556, 562-63 (Tex. Crim. App. 2000), and *Clewis v. State,* 922 S.W.2d 126, 129 (Tex. Crim. App. 1996), for explanations of the same.

A person commits the offense of manslaughter if he recklessly causes the death of an individual. TEX. PEN. CODE ANN. §19.04(a) (Vernon 1994). A person acts recklessly when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. *Id.* §6.03(c). Further, the risk must be of such a nature and degree that its disregard is a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances. *Id.*

A person commits the offense of criminally negligent homicide if he causes the death of an individual by criminal negligence. *Id.* §19.05(a). A person acts with criminal negligence when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. *Id.* §6.03(d). Once again, the risk must be of such a nature and degree that its disregard grossly deviates from an ordinary person standard of care. *Id.*

The difference between the mental states required for the two offenses is whether the defendant perceived the risk of harm which his conduct created. *Lugo v. State,* 667 S.W.2d 144, 148 (Tex. Crim. App. 1984); *Moore v. State,* 574 S.W.2d 122, 123 (Tex. Crim. App. 1978). In finding appellant guilty of manslaughter, the jury obviously believed

3

appellant did perceive the risk which might result from her conduct but consciously disregarded it. However, appellant contends that, even though she picked up a knife, because she did not use it in an aggressive manner but held it by her side and did not even realize it was still in her hand at the time Freddy was stabbed, there is no evidence she understood the risk.

Proof of a culpable mental state often depends upon circumstantial evidence, and its existence is an inference to be drawn from all the circumstances by the trier of fact. *Dillon v. State,* 574 S.W.2d 92, 94 (Tex. Crim. App. 1978). In *Mendieta v. State,* 706 S.W.2d 651 (Tex. Crim. App. 1986), the defendant testified that he pulled out a knife and began swinging to keep the deceased away from him. The court found this to be evidence that the defendant was aware of the risk he was creating. *Id.* at 653. *See also Bergeron v. State,* 981 S.W.2d 748, 752-53 (Tex. App.—Houston [1st Dist.] 1998 pet. ref'd) (holding that, even though the defendant was merely trying to ward off the victim when he drew a knife and stabbed him in the groin, it was not evidence that the defendant failed to perceive the risk that the victim might be seriously injured or killed as a result of the use of the knife). Further, it has been held that if a defendant knows that firing a gun at a decedent would scare her, he necessarily perceives the risk associated with shooting the gun. *Cardona v. State,* 973 S.W.2d 412, 416 (Tex. App.—Austin 1998, no pet.).

The evidence based on appellant's own statement and testimony shows that 1) appellant and Freddy were arguing over him seeing another woman, 2) appellant had asked Freddy to move out of the apartment, 3) appellant was afraid Freddy was going to hit her so she picked up a knife "to scare him," 4) after Freddy saw the knife in her hand,

4

he told her not to stab him, 5) appellant told Freddy she would not stab him but she wanted him to leave, 6) appellant pushed her to the ground, and 7) as appellant rose up, she balled up her hands because she thought Freddy was going to hit her and pushed him with her hands while holding a knife. There was also evidence from a doctor in the medical examiner's office that the stab wound went from an up to down direction.

Thus, appellant admitted she picked up the knife to scare Freddy. Furthermore, the ensuing exchange between Freddy and appellant (when he told her not to stab him and she agreed not to do so) shows an awareness on appellant's part of the risk of danger posed by the knife appellant held. Further, with knife in hand, she pushed Freddy with her hands as he approached. The jury was also free to disbelieve appellant's statement that she did not realize the knife was still in her hand when she pushed him. This is some evidence upon which a rational jury could reasonably infer, beyond reasonable doubt, that appellant was aware of the risk associated with the use of a knife but consciously disregarded it, and such a finding would not be manifestly unjust or clearly wrong when tested against all the evidence of record. Accordingly, the verdict enjoys both legally and factually sufficient evidentiary support.

### Issues Three and Four - Deadly Weapon Finding

In her third and fourth issues, appellant complains that the evidence is legally and factually insufficient to support an affirmative finding that the knife used by her was a deadly weapon. We overrule the issues.

The thrust of appellant's argument is that the evidence does not support a finding that she "used" the weapon because she did not intend to stab Freddy. A "deadly weapon" is defined to be "a firearm or anything manifestly designed, made, or adapted for the

5

purpose of inflicting death or serious bodily injury" or "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX. PEN. CODE ANN. §1.07(a)(17) (Vernon 1994). The jury was asked to find beyond a reasonable doubt whether appellant "used or exhibited a deadly weapon, namely a knife, during the commission of the offense for which she has been convicted or during the immediate flight therefrom." Many types of knives are not deadly weapons per se because they are designed for purposes other than inflicting serious bodily injury or death. *McCain v. State,* 22 S.W.3d 497, 502-03 (Tex. Crim. App. 2000). Therefore, the State was required to prove that the knife used by appellant was a deadly weapon based on the manner of its use or intended use. This does not require proof that the actor actually intended death or serious bodily injury, but rather that the object would be capable of causing death or serious bodily injury given the manner of its use or intended use.

Furthermore, the seriousness of the wounds inflicted may be evidence of the object's deadly potential. *Garcia v. State,* 17 S.W.3d 1, 4 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd); *McElhaney v. State,* 899 S.W.2d 15, 17 (Tex. App.—Tyler, 1995, pet. ref'd, untimely filed). Additionally, anything which is actually used to cause the death of a human being is a deadly weapon. *Tyra v. State,* 897 S.W.2d 796, 798 (Tex. Crim. App. 1995). Given this, the evidence illustrating that appellant grabbed the knife to scare Freddy and the evidence that Freddy died from the knife wound caused by the knife appellant held is both legally and factually sufficient to support the deadly weapon finding.

Accordingly, the judgment of the trial court is affirmed.

Per Curiam

Do not publish.

6