11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Brandon Ladon Littles

Appellant

Vs.                   No.  11-01-00375-CR B Appeal from Dallas County

State of Texas

Appellee

 

The jury
convicted appellant of murder and assessed his punishment at 18 years
confinement.  We affirm.

In his
first point of error, appellant contends that the evidence is factually
insufficient to support his conviction. 
In order to determine if the evidence is factually sufficient, we must
review all of the evidence in a neutral light and determine whether the
evidence supporting guilt is so weak as to render the conviction clearly wrong
and manifestly unjust or whether the evidence supporting guilt, although
adequate when taken alone, is so greatly outweighed by the overwhelming weight
of contrary evidence as to render the conviction clearly wrong and manifestly
unjust.  Vasquez v. State, 67 S.W.3d
229, 236 (Tex.Cr.App.2002); Goodman v. State, 66 S.W.3d 283 (Tex.Cr.App.2001);
Cain v. State, 958 S.W.2d 404 (Tex.Cr.App.1997); Clewis v. State 922 S.W.2d 126
(Tex.Cr.App.1996).   We review the fact
finder=s weighing of the evidence and cannot
substitute our judgment for that of the fact finder.  Cain v. State, supra; Clewis v. State, supra.  Due deference must be given to the jury=s determination, particularly concerning the
weight and credibility of the evidence. 
Johnson v. State, 23 S.W.3d 1 (Tex.Cr.App.2000); Jones v. State, 944
S.W.2d 642 (Tex.Cr.App.1996), cert. den=d, 522 U.S. 832 (1997).  This
court has the authority to disagree with the fact finder=s determination Aonly when the record clearly indicates such a
step is necessary to arrest the occurrence of a manifest injustice.@ 
Johnson v. State, supra at 9.     








Nora
Randolph testified at trial that on September 3, 2000, she and a friend named
Mike went to John Baptist Price=s (J.B.) house around 7:00 or 7:30 p.m.  Randolph stated that people frequently went to J.B.=s house to drink and smoke. Randolph and Mike
left J.B.=s house together later that night.   Sometime after midnight, Randolph again
stopped at  J.B.=s house on her way to the Abootleg house@ where people bought beer and cigarettes.  The victim and two other men were also at J.B.=s house. 
After talking for a while, Randolph told the men that she was leaving to
go to the bootleg house. 

Randolph
testified that, as she was leaving the house, she saw appellant asleep in a
chair on the front porch.   Randolph
told the victim to go wake up appellant. 
The victim woke up appellant, and appellant began feeling in his
pockets.  Randolph testified that
appellant then asked the people at the house about something he was missing. 

Randolph
testified that someone drove up across the street from the house and asked
appellant what was the matter.  Randolph
stated that appellant told the man that someone had taken something from
appellant.  Appellant went with the man
to the man=s car. 
When he returned, appellant took a gun from his pocket and fired a shot
that hit the ground in front of Randolph and the victim.  Appellant then raised the gun and fired
three more times.  The victim said A[h]elp me@ and hid behind the side of a vehicle. 
The victim then went down the street. 
Randolph stated that appellant got back in the car and left. 

Everyone
left J.B.=s house except for Randolph and another
man.  Randolph stayed at J.B.=s for awhile and then decided to go to the
bootleg house.  While she was on her
way, a friend picked her up, and they saw the victim lying in the street.  Randolph saw the ambulance going toward the
victim, and she went home. 

Rodney
Wallace, with the Dallas Police Department, testified that on September 4,
2000, he received a call from dispatch at 5:38 a.m. concerning a male lying in
the street.  When he arrived, Officer
Wallace saw the victim lying in the street and saw ants crawling in and out of
his mouth, eyes, and ears.  Officer
Wallace said that the victim had suffered a gunshot wound to the chest. Officer
Wallace said that the evidence at the scene indicated that the victim had been
shot at another location and then walked to the scene where he died.  A trace analyst from the Southwestern
Institute of Forensic Sciences testified that there was no gunshot residue on the
victim=s clothing indicating that the shot was fired
from a distance greater than three or four feet. 








Charlotte
Renee Robinson, appellant=s common-law wife, testified that appellant left the apartment late one
night to go visit friends.  Robinson
said that around 3:00 a.m. she woke up and that appellant was crying in the
bedroom.  Robinson asked appellant why
he was crying, and appellant responded that he was scared.  Appellant then told Robinson that someone
had been shot but that it was an accident and that he did not mean to shoot
him. 

Appellant
testified at trial and gave a different version of the events than
Randolph.  Appellant said that  he arrived at J.B.=s house around midnight and that  the victim and two other men were
there.  Appellant testified that, while
at J.B.=s house, he drank some beer and smoked a
cigar containing marihuana.  Appellant
stated that he fell asleep in a chair on the porch and slept for approximately
one hour.   Appellant said that, when he
went to sleep, he had  $100 in his
pocket and that, when he woke up, the money was gone.  Appellant began asking the people at the house who had his
money.  Appellant testified that
Randolph Awas like throwing it off on somebody like
check him, I seen him moving.@  Appellant said that everyone
began arguing about who had taken his money. 
At that time, appellant=s friend ABlack@ drove up and parked in front of the house.

Appellant
testified that he went over to Black=s car and told him what had happened. 
Appellant stated that he saw a pistol in Black=s car. 
Appellant grabbed the pistol and went back to the house.  Appellant said that he was Abluffing@ and that he did not point the pistol at anyone.  Appellant waived the pistol so that everyone
could see it.  Appellant said that the
victim reached toward him and that appellant thought the victim was reaching
for the pistol.  Appellant pushed the
victim, and the Agun went off.@  Appellant spun around after he
pushed the victim, and the gun went off a second time hitting a window in a
Suburban.

Appellant
testified that the victim said, AOh man.  Man, you shot me.  Why you shoot me, man?  Why you shoot me?@  The
victim then began walking away and asked a neighbor to call an ambulance.  Appellant said that he went toward his
mother=s house and then found a ride to his
house.  Appellant stated that he did not
intend to shoot anyone. 








Appellant
specifically argues that the evidence is factually insufficient to prove that
he intentionally and knowingly caused the death of the victim or that he
intended to cause serious bodily injury that resulted in the victim=s death as alleged in the indictment.  However, Randolph testified that appellant
fired the first shot in her direction, not just at the ground.  Randolph further testified that appellant
pointed the gun in the direction of the people at the house.  Shortly after appellant pointed the gun at
them, the victim began asking for help. 
The jury is the sole judge of the credibility of the witnesses and the
weight to be given their testimony, and it is also the exclusive province of
the jury to reconcile conflicts in the evidence.  TEX. CODE CRIM. PRO. ANN. art. 36.13 & 38.04 (Vernon 1979
& 1981); Wesbrook v. State, 29 S.W.3d 103 (Tex.Cr.App. 2000), cert. den=d, 532 U.S. 944 (2001). Viewing all of the evidence, we do not find that
the verdict is so contrary to the overwhelming weight of the evidence as to be
clearly wrong and unjust.  Clewis v.
State, supra.  Appellant=s first point of error is overruled.

In his
second point of error, appellant contends that the trial court erred in denying
his request for a charge on the lesser included offense of criminally negligent
homicide.  Appellant requested charges
on the lesser included offenses of manslaughter, aggravated assault, and
criminally negligent homicide.  The
trial court instructed the jury on the lesser offenses of manslaughter and
aggravated assault. 

An accused
is entitled to a charge on a lesser included offense if the lesser offense is
included within the proof necessary to establish the offense charged and if
there is some evidence in the record that would permit a jury to rationally
find that, if appellant is guilty, he is guilty only of the lesser offense.  Rousseau v. State, 855 S.W.2d 666, 673
(Tex.Cr.App.), cert. den=d, 510 U.S. 919
(1993).  This is true regardless of
whether such evidence is strong or weak or unimpeached or contradicted and
regardless of what the trial court may or may not think about the credibility
of the evidence.   Bartholomew v. State,
871 S.W.2d 210 (Tex.Cr.App.1994); Hayes v. State, 728 S.W.2d 804, 807
(Tex.Cr.App.1987); Mares v. State, 903 S.W.2d 419, 421 (Tex.App. ‑
Eastland 1995, pet=n ref=d). 
Criminally negligent homicide is a lesser included offense of murder;
therefore, we must determine whether there is some evidence that appellant is
only guilty of criminally negligent homicide. 
Thomas v. State, 699 S.W.2d 845 (Tex.Cr.App.1985).








A person
commits the offense of criminally negligent homicide if he causes the death of
an individual by criminal negligence. 
TEX. PENAL CODE ANN. ' 19.05(a) (Vernon 1994).  A
person acts with criminal negligence when Ahe ought to be aware of a substantial and unjustifiable risk that the
circumstances exist or the result will occur.@  TEX. PENAL CODE ANN. ' 6.03(d) (Vernon 1994).  The charge of criminally negligent homicide
is required in a particular case if the record contains evidence showing that
the defendant was unaware of the risk or that he failed to perceive the risk
created by his conduct.  Mendieta v.
State, 706 S.W.2d 651, 653 (Tex.Cr.App.1986); Thomas v. State, supra. 

Appellant
testified that he had the pistol at his side and then that he was Awaving@  it so the others could see
that he had a gun.  The victim reached
for the pistol, and appellant pushed him. 
Appellant said that he did not know whether or not the gun was loaded
and that he did not intend to shoot anyone. 


An
allegation of accidental discharge does not necessarily raise the issue of
criminally negligent homicide.   Thomas
v. State, supra at 850.  The mere fact
that the defendant testified that someone bumped him, causing him to pull the
trigger, does not necessarily alter the awareness of risk.  Thomas v. State, supra.    Just because part of the conduct may be
involuntary does not relieve a defendant of responsibility and culpability for
the entire action.  Thomas v. State,
supra.   It may be the case that a
defendant has awareness of the risk and disregards it.  Thomas v. State, supra. Emphasis should not
be placed on the gun=s
accidental discharge, although that is a circumstance that should be
considered.  Thomas v. State, supra. The
record shows that appellant took a pistol, not knowing whether or not it was
loaded, and waved it at a group of people. 
Appellant testified that the pistol was a semiautomatic and that just
touching the trigger could cause it to go off. 
Appellant=s testimony does not show that he was unaware
of or failed to perceive the risk of his conduct.  Therefore, we hold that the trial court did not err when it
refused to include a jury instruction on criminally negligent homicide.

Moreover,
the jury was authorized to convict appellant of manslaughter.  The jury=s rejection of one lesser included offense will not automatically
render harmless the trial court's failure to authorize the jury to convict on
another lesser included offense also raised by the evidence.  Saunders v. State, 913 S.W.2d 564
(Tex.Cr.App.1995).  However, the record
does not show a Arealistic probability@ that the jury=s decision was reduced to whether appellant committed murder or
criminally negligent homicide.  
Saunders v. State, supra at 573. 
Appellant has not shown that he was harmed by the trial court=s failure to include the lesser offense of
criminally negligent homicide in the jury charge.  Almanza v. State, 686 S.W.2d 157 (Tex.Cr.App.1985).  Appellant=s second point of error is overruled.








In his
third point of error, appellant argues that the State made an impermissible
jury argument.  During its final argument,
the State commented that, A[a]s far as any favors given Nora Randolph, I can guarantee you I met
Ms. Randolph for the very first time last Thursday.  She was as honest with me as she was with you.@  The
trial court overruled appellant=s objection to the argument. 
Appellant contends that the argument bolstered the credibility of
Randolph.

Appellant
argued during his closing argument that Randolph was not a credible witness
because she was a crack addict. 
Appellant stated that Asomewhere down the line [Randolph] is going to need some help from the
district attorney=s
office and will be asking for that.@  Appellant also stated that Athe district attorney can help her or hurt
her in that regard, her getting out on early parole.  A simple letter from their office can help her or hurt her.@  The
record shows that the State=s comments during its final argument were in response to appellant=s closing argument.  Coble v. State, 871 S.W.2d 192 (Tex.Cr.App.1993), cert. den=d, 513 U.S. 829 (1994); see Wylie v. State, 908 S.W.2d 307 (Tex.App. -
San Antonio 1995, pet=n ref=d). 
Moreover, the comment was not calculated to deprive appellant of a fair
and impartial trial.  Wesbrook v. State,
supra.  Appellant=s third point of error is overruled.

The
judgment of the trial court is affirmed.

 

W.G.
ARNOT, III

CHIEF
JUSTICE

 

January 30, 2003

Do not publish.  See TEX.R.APP.P. 47.2(b).

Panel consists of: Arnot, C.J., and

Wright, J., and McCall, J.