MARY'S OPINION HEADING 






                                                                                    NO. 12-03-00001-CR
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS
GERARD JOSEPH GAGNON,                         §                 APPEAL FROM THE 173RD
APPELLANT
 
V.                                                                         §                 JUDICIAL DISTRICT COURT OF

THE STATE OF TEXAS,
APPELLEE                                                        §                 HENDERSON COUNTY, TEXAS
                                                                                                                                                            
MEMORANDUM OPINION
            Gerard Joseph Gagnon (“Appellant”) was indicted for murder. A jury convicted Appellant
of the lesser-included offense of manslaughter and assessed his punishment at fifteen years of
imprisonment and a $5,000 fine. Appellant raises two issues on appeal. We affirm.
 
Background
            On January 18, 2002, Timothy Hinds (“Timothy”) and his friend Benny Ralph Truly
(“Benny”) spent the day drinking together. Benny consumed enough alcohol to become intoxicated. 
That evening, Timothy drove Benny to Appellant’s residence. They walked to the door and knocked,
and Appellant answered the door holding an AK-47 rifle. Appellant did not explain why he had the
gun. He invited Benny and Timothy in, and they all three sat down at a table to drink a beer and talk. 
Benny wanted to make a phone call, and Appellant went with Timothy into another room.
            Later Appellant and Timothy rejoined Benny at the table. Benny was still on the phone and
was also smoking a cigarette. He began to flick ashes on the table, and Appellant asked him to stop. 
Benny continued to flick his ashes, and Appellant more emphatically asked him to stop. Benny did
not comply, and Appellant became angry. Appellant went into an adjoining room and came back
with the AK-47 rifle he had earlier. He then asked Benny and Timothy to leave. Although Timothy
tried to persuade Benny to leave, Benny “was just staring” at Appellant and made no move to leave.
            Appellant then fired a shot into the floor, but Benny and Timothy remained in the house. 
Appellant, with one hand on the gun, grabbed Benny with the other hand, pushing him to the floor. 
Benny finally left the residence with assistance from Timothy. Timothy was able to get Benny to
the back door and directed him toward the car. Timothy then went back into the house to try to
resolve the situation. When he entered the room where the confrontation had occurred, he saw
Appellant loading another clip in the gun. At the same time, Appellant was talking on the telephone. 
Timothy overheard Appellant telling the person on the telephone to call 9-1-1. 
            Appellant walked past Timothy, went out the back door, and fired a shot into the ground in
Benny’s direction. Appellant fired more shots, and Timothy moved toward the back door. He saw
Benny walking toward the back door and watched as Appellant shot Benny twice in the leg and a
third time in his upper body. Benny fell face forward. Appellant told Timothy to “get out of there”
and went back into his house. Timothy promptly left, and Benny died as a result of his injuries.              Appellant was indicted for murder. At trial, Appellant testified that he did not intentionally
or knowingly kill Benny. He testified that he retrieved the gun so that Benny and Timothy would
leave his house. He also stated that he felt threatened by Benny’s actions, which included a threat
to kill Appellant. According to Appellant, Benny had a bottle in his hand as he was coming toward
Appellant at the back door. Appellant asserted that the use of force was necessary to protect himself.
            Timothy testified that neither he nor Benny had a firearm at any time during the evening and
that Benny did not have anything in his hands at the time Appellant shot him.
            A jury found Appellant guilty of the lesser-included offense of manslaughter and assessed
his punishment at fifteen years in prison and a $5,000 fine.
 
Jury Charge Error
            Appellant, in his first issue, asserts that the trial court erred when it denied his requested jury
charge on the lesser-included offense of criminally negligent homicide.
 
Applicable Law
            A jury instruction on a lesser-included offense is required only if the lesser offense is
included within the proof necessary to establish the offense charged and some evidence exists in the
record that if the defendant is guilty, he is guilty only of the lesser offense. Rousseau v. State, 855
S.W.2d 666, 672 (Tex. Crim. App. 1993). Anything more than a scintilla of evidence is sufficient
to entitle a defendant to a lesser charge. Bignall v. State, 887 S.W.2d 21, 23 (Tex. Crim. App.
1994). 
            Criminally negligent homicide is a lesser-included offense of murder. Saunders v. State, 840
S.W.2d 390, 391 (Tex. Crim. App. 1992). Criminally negligent homicide requires that a person act
with criminal negligence. Tex. Pen. Code Ann. § 19.05 (Vernon 2003). A person acts with
criminal negligence when he ought to be aware of a substantial and unjustifiable risk. Tex. Pen.
Code Ann. § 6.03(d) (Vernon 2003). The risk must be such that the failure to perceive it constitutes
a gross deviation from the standard of care that an ordinary person would exercise under all the
circumstances viewed from the actor’s standpoint. Id. Therefore, before a charge on criminally
negligent homicide is proper, the record must contain evidence showing that the defendant was
unaware of the risk or that he failed to perceive the risk created by his conduct. Mendieta v. State,
706 S.W.2d 651, 653 (Tex. Crim. App. 1986); Thomas v. State, 699 S.W.2d 845, 849 (Tex. Crim.
App. 1985).
Analysis
            The State asserts that Appellant’s failure to object to the trial court’s denial of his requested 
charge on criminally negligent homicide waives error, if any, by the trial court.
            It is well-settled in Texas that jury charge error is analyzed according to whether the alleged
error was objected to at trial. Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). Error
relating to a jury charge may be preserved by asserting an objection or requesting a charge. Vasquez
v. State, 919 S.W.2d 433, 435 (Tex. Crim. App. 1996). Here, Appellant submitted a requested
charge. Therefore, we hold that Appellant preserved the issue for our review.
            In addressing the merits of Appellant’s issue, we must first determine if there is some
evidence that would allow a rational jury to find that if Appellant is guilty, he is guilty of criminally
negligent homicide only. See Rousseau, 855 S.W.2d at 672. Appellant contends that the facts in
the case at hand are analogous to the facts in Gonzalez v. State, 733 S.W.2d 589 (Tex. App.–San
Antonio 1987, pet. ref’d). Therefore, his argument continues, the trial court erred in refusing to
charge the jury on criminally negligent homicide.
            In Gonzalez, the jury charge included the offense of voluntary manslaughter, as charged in
the indictment, as well as the lesser-included offenses of involuntary manslaughter and criminally
negligent homicide. However, the trial court denied the defendant’s request for a charge on
aggravated assault. Id. at 591 & n.2. The court of appeals disagreed with the trial court, holding that
the evidence supported the submission of aggravated assault to the jury. Specifically, the court
concluded that the defendant’s testimony that he shot with no intent to kill or injure the victim, but
merely wanted to scare the victim, provided sufficient evidence that if the defendant was guilty, he
was guilty of aggravated assault only. Id. at 590. 
            The facts in Gonzalez are distinguishable from the instant case. Here, the prosecutor elicited
the following testimony during cross-examination of Appellant: 
            PROSECUTOR: You didn’t have any idea that gun had that kind of power to it,
Mr. Gagnon?
 
              APPELLANT:    I was aware of that.
 
              PROSECUTOR: So you knew?
 
              APPELLANT:    Yes.
 
              PROSECUTOR: You knew what it could do to somebody, right?
 
              APPELLANT:    Correct.
 
              PROSECUTOR: It’s not the first time you ever fired that gun?
 
              APPELLANT:    No, it is not.


Evidence that a defendant knows a gun is loaded, that he is familiar with guns and their potential for
injury, and that he points a gun at another indicates a person who is aware of a risk created by that
conduct and disregards that risk. Thomas, 699 S.W.2d at 850. Therefore, Appellant was not entitled
to a charge on criminally negligent homicide. Appellant’s first issue is overruled.
 
 
Extraneous Conduct
            In Appellant’s second issue, he asserts that the trial court erred by admitting certain evidence
of extraneous conduct by Appellant. The extraneous conduct was presented through the testimony
of Appellant’s neighbor, Paul Hathcoat, concerning Appellant’s previous use of weapons. Appellant
objected to the admission of the evidence arguing that it was not relevant and was of no probative
value. The trial court overruled Appellant’s objections, admitted the testimony, and gave the
following limiting instruction:
 
All right. Ladies and Gentlemen of the Jury, the Court is about to give you some - is about to allow
you to hear some evidence about other acts of the Defendant in this case. But I want to instruct you
that you’re to only - the purpose to which I’m admitting this evidence before you is to show, if it does,
the state of mind, if any, of the accused or the defendant, at the time of the incident he’s charged with,
if any instance did, in fact, occur.

Standard of Review and Applicable Law

            We review the trial court’s decision to admit the extraneous misconduct evidence for an
abuse of discretion. Montgomery v. State, 810 S.W.2d 372, 390 (Tex. Crim. App. 1990) (op. on
reh’g). A trial court abuses its discretion if the admission of evidence is outside the zone of
reasonable disagreement. Id.
            Evidence of extraneous conduct is admissible if it is relevant to a material issue in the case
and the probative value of that evidence is not substantially outweighed by its potential to prejudice
the jury. Taylor v. State, 920 S.W.2d 319, 321-22 (Tex. Crim. App. 1996). An extraneous offense
is admissible to prove the culpable mental state required for the charged offense if the required intent
cannot be inferred from the act itself, or if the accused presents evidence to rebut that inference. 
Johnson, 932 S.W.2d 296, 302 (Tex. App.—Austin 1996, pet. ref’d). 
            Intent is most clearly in issue when the defendant argues that the charged offense was
unintentional or the result of an accident. Id. Once the defendant claims accident, mistake, lack of
intent, or other such defensive theory, intent can no longer be inferred from other uncontested direct
evidence, and the State is allowed to prove intent through evidence of other crimes, wrongs, or acts
or to show violent acts where the defendant was an aggressor. Id. In this case, Appellant alluded
to his claim of self defense through his cross examination of Timothy. He then claimed that he acted
or reacted the way he did out of fear of the victim, thus acting in self defense. Consequently, the
element of Appellant’s intent in the case was at issue throughout the trial.
            Paul Hathcoat testified that he was aware of “a lot” of instances in which Appellant shot his
gun outside his house when he was angry and, thereafter, people drove away from the house
hurriedly. The trial court admitted this testimony to show that Appellant’s intent was to frighten and
intimidate Benny. This evidence rebutted Appellant’s self defense theory. Based on our review of
the record, we cannot say that the trial court’s admission of Hathcoat’s testimony was outside “the
zone of reasonable disagreement.” Appellant’s second issue is overruled.
 
Disposition
            Having overruled both of Appellant’s issues, we affirm the judgment of the trial court.
 
 
 
                                                                                                    DIANE DEVASTO 
                                                                                                                 Justice
 
 
Opinion delivered July 30, 2004.
Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.













(DO NOT PUBLISH)