

## NUMBER 13-11-00464-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI – EDINBURG

**HOWARD LEE SHAFER JR.,**                                                    **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                    **Appellee.**

### On appeal from the 66th District Court
### of Hill County, Texas.

## MEMORANDUM OPINION

**Before Justices Rodriguez, Garza, and Vela**
**Memorandum Opinion by Justice Garza**

Appellant, Howard Lee Shafer Jr., was convicted of murder, *see* TEX. PENAL CODE ANN. § 19.02 (West 2011), and was sentenced to life imprisonment. By three issues on appeal, Shafer contends that the trial court erred by (1) admitting evidence of extraneous bad acts, and (2) denying his request to instruct the jury on the lesser-

included offense of criminally negligent homicide.  We affirm.

## I. BACKGROUND

On the evening of November 6, 2009, Hill County Sheriff's Office deputies were dispatched to a county road near Hillsboro, Texas, to investigate a call regarding an unresponsive female.  At the scene, officers met Mike Smith and his friend, Lizabeth Wallace.  Smith directed the officers to the unresponsive female, who was wearing a purple shirt, and he identified the woman as Kathy Todd,[1] his ex-girlfriend.  Todd was lying on the ground outside a large shed about thirty feet away from Smith's house.  It was apparent to the officers that Todd was deceased, because she appeared to have suffered severe trauma to the back of her head, there was a large puddle of blood under her body, and there was blood spatter and apparent pieces of brain matter and skull scattered around the scene.  Police recovered several items from the scene, including three pistols and two rifles from a black pickup truck that was parked nearby.

Travis Smith, Mike Smith's father, testified that Todd visited him in his house on November 6, 2009.  The two talked over coffee.  When Todd left, she told Travis that she was going to Mike's house, which was around three miles away.  Over objection by defense counsel, Travis testified that he had been the victim of a burglary at his house the previous month, and that several firearms and food items were stolen from his house.

Mike Smith testified that, on November 5, "[s]omeone broke into [his] home" and "shot up the front door of a storage shed."  Smith was not at his home at the time; when he returned, he noticed that someone had broken in but he did not notice anything

---

[1] Both appellate briefs use "Kathy Crawford" as the victim's name.  The record reflects that "Kathy Todd Crawford" was the name used in the indictment and that both parties used "Kathy Todd" at trial.

missing from his house. Police noted that there were several bullet holes in the front door of Smith's house, and that the size of the holes was consistent with the firearms that had been stolen from Smith's father's house.

Smith said that he and Todd had lived together for about a year; Todd moved out approximately two months before she was killed. Smith testified that the storage shed which had been shot at on November 5 belonged to Todd. He stated that he informed Todd about the fact that someone had shot at her shed, and that Todd planned to come to the shed the next day, November 6, to retrieve some of her belongings.

Smith testified that, on the day of November 6, he drove Wallace to Waco for a doctor's appointment. He left around 9:30 a.m., picked Wallace up at around 10:00 a.m., and drove to Waco. Smith testified that Todd called him at around 1:30 p.m., while he and Wallace were still in Waco, and told him that she was going to start loading up items she wanted to take back with her. According to Smith, Todd called him again at around 3:00 p.m. and said that after she was finished loading the items, she was going to go to Travis's house to have coffee. After patronizing a pool hall and a mall, Smith and Wallace left Waco at around 3:30 p.m. They stopped at Wallace's mother's house and a Wal-Mart, and finally returned to Smith's house at around 7:30 p.m. Smith provided receipts from his various purchases that day to police, and they were entered into evidence at trial.

When Smith returned home on the evening of November 6, he noticed that Todd's son's truck was in his driveway. When he went over to the shed to see if Todd was still there, he saw Todd's body at the foot of a small staircase in front of the shed. Smith initially thought that Todd had accidentally fallen down the stairs. He called 911.

3

Soon afterward, he realized Todd was dead. He went to the sheriff's office for questioning; at that time, one of the officers pointed out to Smith that he had apparent blood stains on his pants and boots. He believed the stains were made when he was kneeling down next to Todd's body in an attempt to see if she was breathing.

Smith testified that, the following day, he saw one of his rifles in a police car. The rifle was a .270-caliber Winchester, had a scope attached to it, and was covered in a "real thick grease" which had not been there when he last saw it. According to Smith, he had last used the rifle "a number of months" before Todd was killed. Up until that point, he did not realize that the rifle was missing.

Smith stated that, in 2009, he hired Tim Sulak, a local farmer, to harvest the wheat crop on his property. Sulak came to do the job with his equipment and a "harvest crew." Appellant, Howard Shafer, was one of the members of Sulak's crew.

Sulak had also done farm work in the past for Patricia Dumas, who lives nearby Smith. Dumas testified that she noticed something unusual on her property on November 7, 2009. There was food missing from a freezer that she kept on her porch, the gate to her barn was open, there was a jacket hanging on the gate, and there were "two couch cushions laying in the trough in the barn." She notified the police that she suspected someone might be living in her barn.

Deputy Hunter Barnes responded to Dumas's call. He recognized that Dumas's property was nearby the location of the previous day's homicide and called for additional units to assist him. The officers surrounded, then entered the barn. Deputy Barnes announced his presence and authority "several times," but no one responded. The officers searched the barn and eventually discovered Shafer hiding behind a stable

4

door. Deputy Barnes ordered Shafer to show his hands; Shafer did not comply, so the officers forced him to the ground, placed him in handcuffs, and took him into custody. Deputy Barnes acknowledged that he and the other officers knew, prior to entering the barn, that Shafer had an outstanding warrant for the burglary of Travis Smith's home, and that they wanted to question Shafer about the previous day's homicide.

In their search of the barn, police recovered lighters, cigarettes, a camouflage jacket, some of the food that was missing from Dumas's freezer, a thermos with Todd's name on it, boxes of ammunition, and several firearms. One of the firearms was a loaded high-caliber rifle with a scope, that appeared to be covered in oil. Crime scene technician Joyce Marek testified that she tested several of the items recovered from the barn for fingerprints. She found fingerprints on some of the items, but they were partial prints, and "there was not enough ridge detail on any one print for positive identification." Marek noted that one of the items, the scoped rifle, had oil present on it, "which is not conducive for prints." Forensic scientist Brent Watson testified that the only DNA found on Shafer's clothes, which were recovered at the time he was arrested, belonged to Shafer.

At the sheriff's office, Shafer spoke to officers and led them to believe that he had information regarding Todd's homicide. Shafer then signed a form advising him of his *Miranda* rights. *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966). He next gave a handwritten statement, which the prosecutor read aloud to the jury. Prior to the prosecutor's reading of the statement, the trial court instructed the jury that evidence concerning any offense other than the indicted offense—i.e., the murder of Kathy Todd—may be considered only if the jury finds beyond a reasonable doubt that Shafer

5

committed the extraneous offense and even then, only to determine motive, opportunity, plan, knowledge, identity, or absence of mistake with respect to the indicted offense. *See* TEX. R. EVID. 404(b). Shafer's statement was as follows:

> Thurs[day] I went to Mike Smith['s] house and used a T post driver to [k]nock the door in and then went threw [sic] house looking for food and found a 270 win. and left with gun went back to barn wear [sic] I was staying[.]
>
> I went back to Mike Smith['s] pasture across the creek from his house and was shooting the 270 win at his Tank and well shed and at the other building which was yellow with green trim to see if the gun was sited in [sic] threw out [sic] the day. Then around dusk I shot at the yellow building with green trim and as I pulled the trigger I seen a purple object ap[p]ear. Then at dark I went back across the creek and up to Mike Smith['s] house from the front side and then seen [sic] a black truck in drive way so I went back down by the creek and came up the back side of his place and when I got to the gap I saw a person laying in front of the yellow building with green trim and had on a purple shirt. I went through the gap and around to side of house where black truck was and opened door got a .25 pistol 2 lighters and pack of cig. Doral and then left went back to barn.

A video recording of the police interview with Shafer was played for the jury. In the interview, Shafer stated that he did not realize the woman with the purple shirt was there at the time he shot at the shed.

Two days later, Shafer led officers to the crime scene. He showed officers where he was sitting and upon which tree he had propped the rifle to take a shot. The location was approximately 138 yards away and slightly downhill from where Todd was found. At trial, the jury was given the opportunity to view an object 138 yards away through the scope that was attached to the rifle found with Shafer in Dumas's barn.

Forensic examinations showed that the projectiles recovered at the scene of Todd's death could not be confirmed, nor could they be eliminated, as having been shot from the rifle found in Dumas's barn. However, the type of ammunition used was

6

consistent with that rifle. An examination by a forensic anthropologist of Todd's cranium, including the pieces of skull found at the crime scene, showed a partial entrance wound slightly to the right of the top of the skull, a near perpendicular entry of the projectile, and an exit wound on the left side of the back of the skull.

Diana Blankenship, a friend of Todd, was called to the witness stand by the defense. She testified that she knew Todd had been in a romantic relationship with Mike Smith, and she thought that Smith may have owed Todd money. Defense counsel asked whether Todd "express[ed] reservation about anything that [Mike Smith] was doing as far as cheating on her . . . with another woman?" Blankenship replied "Yes."

The trial court's charge instructed the jury on the indicted offense of murder as well as the lesser-included offense of manslaughter. *See* TEX. PENAL CODE ANN. § 19.04 (West 2011). The trial court denied defense counsel's request to instruct the jury on the offense of criminally negligent homicide. *See id.* § 19.05 (West 2011). The jury found Shafer guilty of murder and sentenced him to life imprisonment. This appeal followed.[2]

## II. DISCUSSION

### A. Evidence of Extraneous Bad Acts

By his first issue,[3] Shafer contends that the trial court erred, under Texas Rules of Evidence 403 and 404(b), by admitting evidence of extraneous bad acts. Shafer's

---

[2] This appeal was transferred from the Tenth Court of Appeals pursuant to a docket equalization order issued by the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2005).

[3] In Shafer's appellate brief, the argument as to his first issue begins as follows: "The Court should begin their analysis by addressing the question of legal sufficiency." The brief then sets forth the standard of review applicable to a legal sufficiency challenge. However, the brief does not contain any argument actually employing that standard of review, or in any other way addressing the sufficiency of the evidence supporting the conviction. *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made . . . ."). Moreover, neither the table of contents or the list of

7

appellate brief does not state specifically what evidence he is claiming should not have been admitted. However, as part of his argument on appeal, he recites the entirety of the prosecutor's opening statement, and he emphasizes the portions of that statement that refer to the outstanding warrant for Shafer's arrest relating to the burglary of Travis Smith's home. Therefore, we construe Shafer's first issue as challenging the admission of evidence relating to that burglary.

Rule 404(b) states that "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith." TEX. R. EVID. 404(b). "It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." *Id.* We review a trial court's ruling on the admissibility of extraneous offense evidence under an abuse of discretion standard. *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011); *Prible v. State*, 175 S.W.3d 724, 731 (Tex. Crim. App. 2005). As long as the trial court's ruling is within the "zone of reasonable disagreement," there is no abuse of discretion, and the trial court's ruling will be upheld. *Devoe,* 354 S.W.3d at 469; *Prible*, 175 S.W.3d at 731. "A trial court's 404(b) ruling admitting evidence is generally within this zone if there is evidence supporting that an extraneous transaction is relevant to a material, non-propensity issue." *Devoe*, 354 S.W.3d at 469 (citing *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001)).

---

issues presented states that evidentiary sufficiency is an issue in this appeal. *See* TEX. R. APP. P. 38.1(b) ("The table of contents must indicate the subject matter of each issue or point, or group of issues or points."), 38.1(f) ("The brief must state concisely all issues or points presented for review."). Accordingly, the issue of legal sufficiency of the evidence supporting Shafer's conviction is not properly before this Court.

Here, the evidence adduced at trial regarding the burglary of Travis Smith's home included Travis Smith's testimony that his home was burglarized in October 2009; police testimony that the bullet holes on Mike Smith's door were consistent with the firearms that were stolen from Travis Smith's house; and Deputy Barnes's statement that he and other officers knew that Shafer had an outstanding warrant for that burglary at the time they apprehended him.

Under Rule 404(b), evidence of another crime, wrong, or act may be admissible as "same-transaction contextual evidence" where "several crimes are intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction, and full proof by testimony . . . any one of them cannot be given without showing the others." *Id.* Same-transaction contextual evidence is admissible only when the offense would make little or no sense without also bringing in that evidence, and it is admissible "only to the extent that it is necessary to the jury's understanding of the offense." *Id.* Here, Shafer was alleged to have stolen a firearm from Travis Smith's home and then used that firearm to shoot at Mike Smith's property. The burglary and shooting could therefore be seen as "an indivisible criminal transaction." *See id.* Moreover, evidence of the burglary helped to establish how Shafer came into possession of the weapon that was later recovered from the barn in which he was staying and which, the State posited, caused Todd's death. Accordingly, the State's case would have been rendered incomplete if it was unable to present this evidence. *See id.* at 470 (finding trial court did not abuse its discretion in admitting extraneous act evidence where "it would be impossible to [suppress the evidence] without leaving a . . . gaping hole in the State's case").

9

Even if we were to assume that the evidence was not admissible as "same-transaction contextual evidence," evidence of the burglary was nevertheless relevant for purposes beyond showing character conformity. The evidence was relevant in establishing Shafer's identity as Todd's shooter, as well as to show Shafer's opportunity to commit the crime and his preparation and plan to commit the crime. The evidence was therefore admissible under Rule 404(b).

Shafer further contends that the trial court erred in admitting the evidence under rule 403. *See* TEX. R. EVID. 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.").[4] We disagree. Shafer does not explain how evidence of the burglary of Travis Smith's home unfairly prejudiced him or confused the issues. Even assuming that this evidence unfairly prejudiced Shafer, we note that the trial court gave a prompt and comprehensive limiting instruction directing the jury to disregard the evidence unless it found beyond a reasonable doubt that Shafer committed the burglary and then only for the purposes set forth in Rule 404(b). We do not believe the trial court erred in determining that the probative value of this evidence was not substantially outweighed by any prejudicial effects.

Shafer's first issue is overruled.

## B.  Criminally Negligent Homicide

By his second issue, Shafer argues the trial court erred in denying his request to charge the jury on the lesser-included offense of criminally negligent homicide.

---

[4] The State argues that Shafer waived his Rule 403 issue because he failed to raise it at trial. Our review of the record indicates that defense counsel objected "under 401, 403, and 404(b) grounds." The trial court overruled the objection. Accordingly, the issue is preserved for our review.

Courts use a two-pronged test to determine whether a defendant is entitled to an instruction on a lesser-included offense. *See Guzman v. State*, 188 S.W.3d 185, 188 (Tex. Crim. App. 2006); *Salinas v. State*, 163 S.W.3d 734, 741 (Tex. Crim. App. 2005). The first step is to determine whether the offense for which an instruction is requested is, in fact, a lesser-included offense of the alleged offense. *Hall v. State*, 225 S.W.3d 524, 535 (Tex. Crim. App. 2007); *Salinas*, 163 S.W.3d at 741. This determination is a question of law and does not depend on the evidence to be produced at the trial. *Hall*, 225 S.W.3d at 535. Here, it is undisputed that criminally negligent homicide is a lesser-included offense of murder. *See Saunders v. State*, 840 S.W.2d 390, 391 (Tex. Crim. App. 1992).

The second step is to determine if there was some evidence adduced at trial that would permit a rational jury to find that the defendant is guilty of the lesser offense, but not guilty of the greater. *Hall*, 225 S.W.3d at 536; *Salinas*, 163 S.W.3d at 741; *Feldman v. State*, 71 S.W.3d 738, 750 (Tex. Crim. App. 2002). Anything more than a scintilla of evidence may be sufficient to entitle a defendant to a charge on the lesser offense. *Hall*, 225 S.W.3d at 536. An instruction on the lesser offense must be given if the evidence—"whether produced by the State or the defendant and whether it be strong, weak, unimpeached, or contradicted"—raises the issue of the lesser offense. *Rousseau v. State*, 855 S.W.2d 666, 672 (Tex. Crim. App. 1993); *Bell v. State*, 693 S.W.2d 434, 442 (Tex. Crim. App. 1985). However, "it is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense, but rather, there must be some evidence directly germane to the lesser-included offense for the finder of fact to

11

consider before an instruction on a lesser-included offense is warranted." *Hampton v. State*, 109 S.W.3d 437, 441 (Tex. Crim. App. 2003).

A person is guilty of criminally negligent homicide if he causes the death of another by criminal negligence. TEX. PENAL CODE ANN. § 19.05(a). A person is criminally negligent when he ought to be aware of a substantial and unjustifiable risk that the circumstances surrounding his conduct exist or the result will occur. *Id.* § 6.03(d) (West 2003).

The only evidence that Shafer points to on appeal with regard to this issue is the voluntary written statement he made to police on November 7, 2009. According to Shafer, "[t]he voluntary statement speaks for itself and clearly shows no intentional action" on his part. This argument fails for two reasons. First, even if we were to assume that the statement "clearly shows no intentional action," that would not have necessarily mandated an instruction on criminally negligent homicide. Instead, in order for a charge on criminally negligent homicide to be required, the record must contain evidence showing the defendant's unawareness of a substantial and unjustifiable risk that the result will occur. *Mendieta v. State*, 706 S.W.2d 651, 652 (Tex. Crim. App. 1986). Nothing in Shafer's written statement indicates that he was unaware of the risk of firing a high-powered rifle at an occupied building.

Second, if the jury believed that Shafer acted unintentionally, it could have found him guilty of manslaughter. *See* TEX. PENAL CODE ANN. § 19.04(a) ("A person commits an offense if he recklessly causes the death of an individual."). In *Masterson v. State*, the Texas Court of Criminal Appeals found the omission of a criminally negligent homicide charge to be harmless because the jury was instructed on the lesser-included

offense of manslaughter and yet chose to convict the defendant for murder. 155 S.W.3d 167, 171 (Tex. Crim. App. 2005). The Court noted:

> [T]he jury's failure to find an intervening lesser-included offense (one that is between the requested lesser offense and the offense charged) may, in appropriate circumstances, render a failure to submit the requested lesser offense harmless. This is so because the harm from denying a lesser offense instruction stems from the potential to place the jury in the dilemma of convicting for a greater offense in which the jury has reasonable doubt or releasing entirely from criminal liability a person the jury is convinced is a wrongdoer. The intervening lesser offense is an available compromise, giving the jury the ability to hold the wrongdoer accountable without having to find him guilty of the charged (greater) offense. While the existence of an instruction regarding an intervening lesser offense (such as manslaughter interposed between murder and criminally negligent homicide) does not automatically foreclose harm—because in some circ[u]mstances that intervening lesser offense may be the least plausible theory under the evidence—a court can conclude that the intervening offense instruction renders the error harmless if the jury's rejection of that offense indicates that the jury legitimately believed that the defendant was guilty of the greater, charged offense.

*Id.* (citing *Saunders v. State*, 913 S.W.2d 564, 572 (Tex. Crim. App. 1995)).

This case is analogous. Manslaughter was not "the least plausible theory under the evidence" in this case because the jury could have inferred from the evidence that Shafer was aware of the risk he was taking by shooting at Todd's shed. *See id.* (citing *Saunders*, 913 S.W.2d at 565) (noting that the "basic difference" between manslaughter and criminally negligent homicide is that "in the former, that actor recognizes the risk of death and consciously disregards it, while in the latter he is not, but ought to be, aware of the risk that death will result from his conduct"). The jury's conviction of Shafer for murder, despite the availability of manslaughter, indicated that the jury did in fact believe that Shafer harbored the specific intent required for murder. *See id.* Accordingly, any error by the trial court in declining to charge the jury on criminally negligent homicide was harmless. *See id.*; *see also* TEX. R. APP. P. 44.2(b).

13

We overrule Shafer's second issue.

### III. CONCLUSION

The judgment of the trial court is affirmed.

_____
DORI CONTRERAS GARZA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b)

Delivered and filed the
25th day of October, 2012.